THE CITY OF CHICAGO

· v.

C. J. STRATTON *et al.*

494:33 LRA 47
38 LRA 65

*Filed at Ottawa May 12, 1896—Rehearing denied October 13, 1896.*

1. MUNICIPAL CORPORATIONS—*prohibiting erection of livery stable without consent of property owners—validity of ordinance.* A municipal ordinance declaring it unlawful to locate, build or keep a livery stable in any block in which two-thirds of the buildings are residences unless the owners of a majority of the lots consent in writing, is not invalid as a delegation by the city council to the property owners of the legislative power conferred upon the council, as it is a prohibition of the location of such stables, which may be avoided under the condition of such consent.

2. SAME—*construction of power of city to direct location of livery stables.* A statute empowering a city to direct the location of livery stables includes the power to prohibit or forbid the location of stables within residence districts; and in making such prohibition, such conditions and restrictions in relation to such districts may be imposed as the city council may see fit.*

*City of Chicago* v. *Stratton,* 58 Ill. App. 539, reversed.

APPEAL from the Appellate Court for the First District;—heard in that court on appeal from the Circuit Court of Cook county; the Hon. FRANCIS ADAMS, Judge, presiding.

This suit was brought under a section of the building ordinance of the city of Chicago, and is to recover the penalty for a violation of the ordinance. The section of the ordinance is as follows:

"Sec. 49. It shall not be lawful for any person to locate, build, construct or keep in any block in which two-thirds of the buildings are devoted to exclusive residence purposes, a livery, boarding or sales stable, gas house, gas reservoir, paint, oil or varnish works, within two hun-

---

*The question as to consent of neighbors as a condition of obtaining a license or permit is included in the note on delegation of power as to licenses, franchises and buildings, in *City of St. Louis* v. *Russell,* (Mo.) 20 L. R. A. 721.

dred feet of such residence, on either side of the street, unless the owners of a majority of the lots in such block fronting or abutting on the street consent, in writing, to the location or construction of such livery stable, gas house, gas reservoir, paint, oil or varnish works therein. Such written consent of the property owners shall be filed with the commissioner of buildings before a permit be granted for the construction or keeping of such livery stable, gas house, gas reservoir, paint, oil or varnish works."

It is conceded by the appellees that they are engaged in keeping a livery, boarding and sales stable at Nos. 211 and 213 Evanston avenue, in the city of Chicago; that they were so engaged on the 7th day of June, 1894, at said place, and that they did not procure the consent of the owners of a majority of the lots in such block fronting or abutting on the street before the erection of said building. The building which they were occupying on the 7th day of June, 1894, for that purpose, was constructed under a building permit to erect a two-story and basement brick carriage repository and stable in the rear, which was issued July 28, 1893. Instead of building a stable in the rear, it appears that the horses, some thirty or more, were kept in the basement. The building is back about fifty-nine feet from the street and has a plank drive-way running from the entrance of the stable, which is about six feet above the ground, down to Evanston avenue. The livery stable and drive-way are so near to a residence building on the adjoining lot that carriages driving out and in shake the whole building. On the 7th day of June, 1894, there were thirty-one buildings in the block in which this livery stable is located, twenty-eight of which were devoted to exclusive residence purposes. No petition has ever been signed by a majority of the property owners, as required by the ordinance governing the location and keeping of livery stables in the city of Chicago.

This suit was originally brought before a justice of the peace, where judgment was entered against the defendants, and was by the defendants appealed to the circuit court of Cook county. Upon the trial before the court, a jury having been waived, certain propositions of law, in pursuance of the statute, were offered on behalf of the plaintiff, presenting the question of the legality of the ordinance in question, which the court was requested to hold as the law governing the case, but the court held the section of the ordinance to be invalid and entered a finding for the defendants. Motion for a new trial having been overruled, the court entered judgment upon the finding. The case was taken by appeal to the Appellate Court, where the judgment of the court below was affirmed. The plaintiff now brings the case to this court by appeal.

The assignment of error chiefly relied upon is, that the court below refused to hold as law the following propositions of law submitted on behalf of the plaintiff, the city of Chicago:

2. "The court is requested to hold as a proposition of law, that the provisions of section 49 of the building ordinance of the city of Chicago, passed March 13, 1893, wherein it is ordained that it shall not be lawful for any person to locate, build, construct or keep in any block in which two-thirds of the buildings are devoted to exclusive residence purposes, a livery, boarding or sales stable unless the owners of a majority of the lots in such block fronting or abutting on the street consent, in writing, to the location of such livery stable, is not, under the laws of the said State of Illinois, a delegation of legislative power by the common council of said city of Chicago to the property owners of such block.

3. "The court is requested to hold, as a proposition of law, that section 49 of the building ordinance of the city of Chicago, passed by the common council of said city on the 13th day of March, A. D. 1893, is lawful, valid and

binding upon the defendants in this case, and that under the evidence the plaintiff is entitled to recover.

4. "If the court find, from the evidence, that on the 6th day of June, 1894, the defendants were engaged in keeping a livery, boarding and sales stable within the limits of the city of Chicago, and that the said defendants have not, at any time, procured, in writing, the consent of the owners of a majority of the lots in the block in which said livery stable is located, fronting or abutting on the street upon which the same is located, in pursuance of the requirements of section 49 of the certain building ordinance of the city of Chicago passed by the common council of said city on the 13th day of March, A. D. 1893, and if the court further finds, from the evidence, that two-thirds of the buildings in the block in which said livery stable is located are devoted to exclusive residence purposes, then the court is requested to hold, as a proposition of law, that the defendants have been guilty of a violation of said section 49 of said ordinance, and the plaintiff is entitled to recover in this suit the penalty provided in said ordinance for the violation thereof."

FARSON & GREENFIELD, for appellant:

Cities and villages are expressly authorized to direct the location of livery stables.   3 Starr & Cur. 191, par. 82.

An express power granted by the legislature to a municipal corporation carries with it everything necessary to make it efficient.   *Huston* v. *Clark*, 112 Ill. 349; *People* v. *Drainage Comrs.* 143 id. 421; *Alcorn* v. *Hamer*, 38 Miss. 753.

Statutes of this State and ordinances of a similar character have been recognized by this court and held to be good in *Meyer* v. *Baker*, 120 Ill. 567, *People* v. *Cregier*, 138 id. 401, and *Griswold* v. *Brega*, 160 id. 490.   The same principle has been upheld in other States.  *Boyd* v. *Bryant*, 35 Ark. 70; *State* v. *Cooke*, 24 Minn. 247.

The ordinance is not a delegation of legislative power to property owners, but provides for a contingency, upon the happening of which the ordinance will be inoperative in certain localities. *People* v. *Reynolds*, 5 Gilm. 1; *People* v. *Salomon*, 51 Ill. 37; *Groesch* v. *State*, 42 Ind. 547; *Guild* v. *Chicago*, 82 Ill. 472 ; *People* v. *Hoffman*, 116 id. 594 ; *Bull* v. *Reid*, 13 Gratt. 78 ; *Alcorn* v. *Hamer*, 38 Miss. 652 ; *Aurora* v. *United States*, 7 Cranch, 382; *In re Flaherty*, 105 Cal. 558; *Locke's Appeal*, 72 Pa. St. 494; *Fell* v. *State*, 42 Md. 71; *Anderson* v. *Commonwealth*, 76 Ky. 485; *State* v. *Parker*, 26 Vt. 357.

The decisions on local option are also applicable to this case. *Bancroft* v. *Eumas*, 21 Vt. 456; *State* v. *Board*, 52 N. J. L. 398; *Paul* v. *Greene County*, 50 id. 585; *Sandford* v. *Court of Common Pleas*, 36 N. J. 74; *Commonwealth* v. *Weller*, 14 Bush, 218; *State* v. *Wilcox*, 42 Conn. 346; *In re Hoover*, 30 Fed. Rep. 51; *Schulherr* v. *Bordeaux*, 64 Miss. 71.

WILLIAM G. BEALE, Corporation Counsel, and GEORGE A. DUPUY, Assistant Corporation Counsel, also for appellant.

SAMUEL J. HOWE, for appellees:

All of the powers of a corporation are derived from the law and its charter, and no ordinance or by-law of a corporation can enlarge, diminish or vary its powers. Dillon on Mun. Corp. (4th ed.) sec. 317; *Thompson* v. *Carroll*, 22 How. 422. ·

The powers vested in municipal corporations must, as far as practicable, be exercised by ordinances general in their nature and impartial in their operations. *Chicago* v. *Rumpff*, 45 Ill. 97; *Zanone* v. *Mound City*, 103 id. 552.

Ordinances or by-laws must be reasonable, consonant with the general powers and purposes of a corporation, and not inconsistent with the laws or policy of the State. *Tugman* v. *Chicago*, 78 Ill. 405; *Clinton* v. *Phillips*, 58 id. 102; *Trustees* v. *People*, 87 id. 303; *Rulison* v. *Post*, 79 id. 567; *Lake View* v. *Tate*, 130 id. 252; *Yick Woo* v. *Hopkins*, 118 U. S. 356; *In re Tie Loy*, 26 Fed. Rep. 611.

Public powers and trusts are incapable of delegation. Dillon on Mun. Corp. (4th ed.) sec. 96, and cases in note 4; Cooley's Const. Lim. (5th ed.) 249; *Bibel* v. *People*, 67 Ill. 172; *East St. Louis* v. *Wehrung*, 50 id. 28; *Hickey* v. *Railroad Co.* 6 Ill. App. 172; *St. Louis* v. *Russell*, 116 Mo. 248; *In re Quong Woo*, 13 Fed. Rep. 229.

The city having granted a permit to erect the building and also a license to carry on the business, is estopped from taking any action which would interfere with the lawful conduct of the business. *Martel* v. *East St. Louis*, 94 Ill. 67; *Chicago* v. *Sexton*, 115 id. 230.

Mr. JUSTICE MAGRUDER delivered the opinion of the court:

The eighty-second paragraph of section 1 of article 5 of the City and Village act, which has been adopted by the city of Chicago, provides that the city council in cities shall have the power "to direct the location and regulate the use and construction of  *  *  *  livery stables  *  *  *  within the limits of the city." (3 Starr & Cur. Stat. p. 191). The power to make laws, which the constitution confers upon the legislature, cannot be delegated by the legislature to any other body or authority. The constitutional maxim, which prohibits such delegation of legislative power, is not violated when municipal corporations are vested with certain powers of legislation, in view of the recognized propriety of conferring upon such municipal organizations the right to make local regulations, of the need of which they are supposed to be better judges than the legislature of the State. But such powers as are conferred upon municipal corporations must be executed by the municipality, and, so far as they are legislative, cannot be delegated to any subordinate or to any other authority. The same restriction, which rests upon the legislature as to the legislative functions conferred upon it by the constitution, rests upon a municipal corporation as to the powers granted

to it by the legislature. (Cooley's Const. Lim.—6th ed.—
pp. 137, 138, 248, 249). Accordingly, "the principle is a
plain one, that the public powers or trusts devolved by
law or charter upon the council or governing body, to be
exercised by it when and in such manner as it shall judge
best, cannot be delegated to others." (1 Dillon on Mun.
Corp.—4th ed.—sec. 96).

The question, then, in the present case is, whether the
power to direct the location of livery stables and regu-
late their use and construction, which has been conferred
upon the common council of the city of Chicago by the
City and Village act, is delegated by section 49 of the
building ordinance to the owners of a majority of the lots
in the blocks therein specified. That section provides,
that "it shall not be lawful for any person to locate,
build, construct or keep in any block, in which two-thirds
of the buildings are devoted to exclusive residence pur-
poses, a livery, boarding or sales stable   *   *   *   within
two hundred feet of such residence, on either side of the
street, unless the owners of a majority of the lots in
such block fronting or abutting on the street consent in
writing to the location or construction of such livery
stable." It is to be noticed, that the ordinance does not
prohibit the location or construction or keeping of livery
stables in blocks which are vacant, or where the build-
ings are devoted to business purposes, or where less than
two-thirds of the buildings are devoted to exclusive resi-
dence purposes. It forbids the location of such stables
in blocks where two-thirds of the buildings are devoted
to exclusive residence purposes, but provides that they
may be located even in such blocks if the owners of a
majority of the lots therein consent thereto in writing.
There is a general prohibition against the location of
livery stables in blocks where two-thirds of the buildings
are devoted to exclusive residence purposes, and then an
exception to the prohibition is created in favor of blocks
of the class designated, where a majority of the lot own-

ers consent in writing to the location of a livery stable there. We are unable to see how this exception amounts to a delegation by the common council of its power to direct the location of livery stables to such lot owners.

While it may be true, that a livery stable in a city or town is not *per se* a nuisance, "yet it becomes so if so kept or used as to destroy the comfort of owners and occupants of adjacent premises, and so as to impair the value of their property." (13 Am. & Eng. Ency. of Law, p. 935). A livery stable in close proximity to an existing residence may be injurious to the comfort and even health of the occupants by the permeation of deleterious gases and by the near deposit of offal removed therefrom. (*Shiras* v. *Olinger*, 50 Iowa, 571; 32 Am. Rep. 138, and note). As cities are constructed, the division of the territory is into blocks bounded by streets. The persons, who will be injuriously affected by a livery stable, so kept as to be a nuisance, are those whose residences are in the same block where the stable is located. The prohibition against the location of a stable in a residence block is for the benefit of those who reside there. If those for whose benefit the prohibition is created, make no objection to the location of such a stable in their midst, an enforcement of the prohibition as to that block would seem to be unnecessary.

By section 49 the lot owners are not clothed with the power to locate livery stables, but are merely given the privilege of consenting, that an existing ordinance against the location of a livery stable in such a block as theirs may not be enforced as against their block. They are simply allowed to waive the right to insist upon the enforcement of a legal prohibition which was adopted for their benefit and comfort.

It is competent for the legislature to pass a law, the ultimate operation of which may, by its own terms, be made to depend upon a contingency. (*People* v. *Hoffman*, 116 Ill. 587, and cases cited). As was said by the Supreme

Court of Pennsylvania in *Locke's Appeal*, 72 Pa. St. 491: "The true distinction  *  *  *  is this:  The legislature cannot delegate its power to make a law; but it can make a law to delegate a power to determine some fact or state of things upon which the law makes, or intends to make, its own action depend." In the case at bar, the ordinance provides for a contingency, to-wit: the consent of a majority of the lot owners in the block, upon the happening of which the ordinance will be inoperative in certain localities. The operation of the ordinance is made to depend upon the fact of the consent of a majority of the lot owners, but the ordinance is complete in itself as passed.  What are known as local option laws depend for their adoption or enforcement upon the votes of some portion of the people, and yet are not regarded as delegations of legislative power. (13 Am. & Eng. Ency. of Law, p. 991). Delegation of power to make the law is forbidden, as necessarily involving a discretion as to what the law shall be; but there can be no valid objection to a law, which confers an authority or discretion as to its execution, to be exercised under and in pursuance of the law itself. (*Cincinnati, etc. Railroad Co.* v. *Comrs. of Clinton Co.* 1 Ohio St. 77). Here, the provision in reference to the consent of the lot owners affects the execution of the ordinance rather than its enactment. (*People* v. *Salomon*, 51 Ill. 37; *Bull* v. *Read*, 13 Gratt. 78; *Aurora* v. *United States*, 7 Cranch, 382; *Alcorn* v. *Hamer*, 38 Miss. 652). The ordinance in question does not delegate to a majority of the lot owners the right to pass or even approve of it. On the contrary, their consent is in the nature of a condition subsequent, which may defeat the operation of the prohibition against the location of a livery stable in a block where two-thirds of the buildings are devoted to exclusive residence purposes but which was never intended to confer upon the ordinance validity as an expression of the legislative will. (*Alcorn* v. *Hamer, supra*).

The express grant of the power to direct the location of livery stables as made by the legislature to the municipal corporation carries with it all necessary and proper means to make the power effectual. (*Huston* v. *Clark*, 112 Ill. 344). In other words, a grant of legislative power to do a certain thing carries with it the power to use all necessary and proper means to accomplish the end; and the legislature may authorize others to do things which it might properly, but cannot conveniently or advantageously do itself. (*Chicago, Burlington and Quincy Railroad Co.* v. *Jones*, 149 Ill. 361). In determining the question of the location of a livery stable the common council may properly consult the wishes and ascertain the needs of the residents of the block where the stable is to be kept, and to that end make their written consent the basis of the action of the commissioner of buildings in issuing the permit. In matters of purely local concern the parties immediately interested may fairly be supposed to be more competent to judge of their needs than any central authority. (Cooley's Const. Lim.—6th ed.—p. 138).

In *Meyers* v. *Baker*, 120 Ill. 567, there was involved the question of the validity of a section of the Criminal Code, which provides that "whoever, during the time of holding any camp or field meeting for religious purposes, and within one mile of the place of holding such meeting, hawks or peddles goods, wares or merchandise, or, without the permission of the authorities having charge of such meeting, establishes any tent, booth or other place for vending provisions or refreshments, or sells or gives away, or offers to sell or give away, any spirituous liquor, wine, cider or beer, or practices or engages in gaming or horse racing, or exhibits or offers to exhibit any show or play, shall be fined," etc. In that case we held, that "the rule which would control an ordinance would also apply to an act of the legislature," and that the statute did "not confer the power to license on the authorities in charge of the meeting," and we there said (p. 572): "The

fact that the act confers on the authorities the right to consent, or refuse consent, cannot be held to authorize such authorities to license. The right to consent or refuse consent is one thing, while the right or power to license a person to conduct a certain business at a certain place is quite a different thing. Had the legislature intended to authorize the authorities to license, language expressing that intention in plain words would no doubt have been used. But however this may be, we see nothing in the language of the act which can be construed as authorizing the authorities to license."

Where an annexation act of the legislature provided, that, when territory was annexed to a city under the provisions of that act, and, prior to such annexation, there were in force ordinances providing that licenses to keep dram-shops should not be issued except upon petition of a majority of the voters residing within a certain distance of the location of such proposed dram-shop, it was held that such ordinance still remained in force after the annexation, and that it was not unreasonable. (*People ex rel.* v. *Cregier*, 138 Ill. 401).

The case of *City of St. Louis* v. *Russell*, 116 Mo. 248, is relied upon as announcing a different view of the present question from that which is here expressed, but the ordinance condemned in that case provided that no livery stable should "be located on any block of ground in St. Louis without the written consent of the owners of one-half of the ground of said block." It will be noticed, that, in the Missouri case, the ordinance requiring the consent of adjacent property owners related to the entire city. Under the operation of such an ordinance livery stables might be totally suppressed and prohibited everywhere within the municipal limits. The ordinance, however, in the case at bar is not thus unreasonable, as it relates only to certain residence districts which are clearly defined. Within such specified residence districts, the city council undoubtedly has the power to

prohibit or forbid the location of livery stables, and, having the power of total prohibition within those districts, it may impose such conditions and restrictions in relation to their limited area as it may see fit.

For the reasons stated, we are of the opinion that the ordinance here in question is not void as being a delegation of legislative power, and that the circuit court erred in not holding as law the propositions submitted to it as the same are set forth in the statement preceding this opinion.

Accordingly, the judgments of the Appellate and circuit courts are reversed, and the cause is remanded to the circuit court for further proceedings in accordance with the views herein expressed.

*Reversed and remanded.*