(No. 19027.—

THE PEOPLE *ex rel.* Claire Deitenbeck, Appellant, *vs.* THE VILLAGE OF OAK PARK *et al.* Appellees.

*Opinion filed October 25, 1928.*

SABATH & GURMAN, (SAMUEL P. GURMAN, of counsel,) for appellant.

LEVI H. FULLER, for appellees.

Mr. JUSTICE FARMER delivered the opinion of the court:

The appellant, as trustee for two minor beneficiaries under a certain will, filed her petition for *mandamus* in the circuit court of Cook county seeking to compel the village of Oak Park and its commissioner of public works to issue a permit to appellant to proceed with the construction of a gasoline filling station, and the necessary equipment and driveways therefor, upon the east 41 feet of three lots located on the northwest corner of the intersection of Madison street and Oak Park avenue. The court denied the petition, and having certified that the validity of a municipal ordinance is involved and that public interest requires that the question shall be considered by the Supreme Court, an appeal has been prosecuted direct to this court.

The material facts presented and agreed to upon the hearing are substantially as follows: The appellant, as trustee, has title to platted property having a frontage of 160 feet on Oak Park avenue, a north and south street, and a frontage of 141 feet on Madison street, an east and west street. The west 100 feet of appellant's Madison street frontage are improved with two buildings, which for several years have been occupied and used as an automobile salesroom and repair shop and for the sale of gasoline. The east 41 feet of appellant's Madison street frontage also extend north along Oak Park avenue for 160 feet and are unimproved. The trustee entered into a conditional ten-year lease of the entire property, 160 feet by 141 feet, for a total sum of $108,000, provided a gasoline filling station and its necessary equipment could be erected, installed and operated upon the vacant corner of the premises. The ordinances of the village of Oak Park required securing permits prior to the erection of any building within the village, and also contained other provisions which were claimed to be applicable to an improvement similar to the one here involved. The commissioner of public works decided that

under the provisions of section 980 of the village code the property here involved was located within a residence district, and that being true, it was necessary, under section 982 of the village code, before any such improvement could be made, that appellant first obtain the written consent of the owners of more than one-half of the property frontage in such residence district and file the same with the commissioner. Conferences were held with representatives of the commissioner's office at different times relative to the application for a permit to make the improvement, also concerning the necessary plats and written consents to accompany the application, and on December 9, 1927, there was filed in the commissioner's office formal application for a permit, also architect's plans and specifications for the entire improvement as contemplated, the written consents of the owners of more than fifty per cent of the lots, according to frontage, within a radius of 400 feet from the outer walls of the building, as provided by section 980, and the required fee. It appears that the plats used in connection with the securing of written consents were prepared in the commissioner's office, and some of the data secured for the purpose were to a great extent supervised or suggested by persons in charge of that office. The record also discloses that a double-track street railway is operated over and along Madison street, and that within the 400-foot radius from the proposed building in every direction there were thirty-four residences, having a total lot frontage of 1945 feet, and nineteen buildings wherein forty businesses were located, having a total lot frontage of 2506 feet. Within said area the north and south sides of Madison street are used for business; a gasoline filling station is located on the corner of Madison street and Oak Park avenue, just across the street east from the premises here involved; the west 100 feet of appellant's property are occupied for business purposes, as previously stated; the west half of the same block, having a frontage of 141 feet on the north side of

Madison street and about 110 feet on Grove avenue, a north and south street one block west of Oak Park avenue, is improved and occupied for the purpose of sales and service of Cadillac automobiles; on the south side of Madison street a meat market, tire shop, drug store, lunch room, bank, and a National Biscuit Company's distributing station, are located, and on the north side of Madison street, east of Oak. Park avenue, are several service stations and garages. It further appears that under the village zoning ordinance more than half of the lot frontage within a radius of 400 feet of appellant's property is zoned for commercial or business purposes, and during the pendency of this cause, as we understand the record, the property on Oak Park avenue from Madison street north one block to Washington boulevard was zoned for business use. Within an hour after the filing with the commissioner of public works by appellant of the written consents of the property owners there were certain withdrawals of consents filed, and sufficient withdrawals continued during a few days thereafter to reduce the total number of consents to less than that required by the village code.

Section 980 of the Oak Park code, under which authority the commissioner of public works declared that the premises of appellant were within a residence district, is as follows: "For the purposes of this article a residence district is defined to be the area adjacent to any building or proposed building which is to be erected, measuring 400 feet from the outer walls of such building in every direction, within which area more than one-half the buildings thereon (exclusive of barns or other out-buildings used or intended to be used in connection with the principal building on any lot) are used or intended to be used exclusively for residence purposes. Where only a part of any lot shall be included within said area, the entire lot and the use thereof shall be considered in determining whether said area constitutes a residence district. Where the consent of property

owners is required by this article for the erection, alteration or maintenance of any building for any purpose, the signatures of the owners, their addresses and the legal description of each property owner's property shall be given. Where consents are required in a residence district as herein described, the frontage of all lots wholly or partly included in this said area shall be considered in determining the sufficiency of said petition."

Appellant contends that the method provided for in the ordinance to define and determine a residence district, and particularly when applied to the facts and circumstances of this case, is unreasonable, arbitrary and void. Counsel for appellant say that a proper method or test to determine whether a designated area is a business or residence district should not be based solely upon a count of the business or residence buildings located within the district, without reference to the frontage of the lots upon which the respective buildings are located. It is insisted that a fair test or method is, if a lot within any designated area has a business or residence building upon it, then the frontage of such lot should be used and added as a part of the frontage to which it belongs in calculating whether such district or area is residence or business. In other words, a business building occupying, for example, 141 feet frontage, as did one business in the area here involved, and a small residence occupying a 25-foot frontage within the same district, should not be placed upon the same basis in ascertaining whether such area is a business or residence district. We have thought of no set of facts, and none has been presented to us in the briefs, whereby any hardship or unreasonable result would occur in determining the kind or nature of a district by using the method suggested by appellant. However, examples may be given under the present ordinance whereby several small properties, whether occupied for business or for residence purposes, could determine the character of the entire district. In the instant case, under the

test provided by the village ordinance appellant's property is declared to be within a residence district, and she is unable, without the written consent of the owners of over fifty per cent of the property in that district, to construct and operate a filling station upon her vacant corner property even though the balance of her adjoining property has been used for some years for commercial purposes and the other properties facing upon both sides of the same street are occupied by various kinds of business. In addition thereto, a gasoline filling station is now operated just across the street from appellant's proposed filling station, and other service stations and garages are in operation in the adjoining block. The facts presented by this record are undisputed and clearly establish that the immediate neighborhood in which appellant's property is located is devoted to commercial pursuits. Even a majority of the property within the 400-foot radius designated by the ordinance was at the time this suit was instituted, or has since been, zoned for business use. The actual circumstances and facts in the case at bar have been of no consequence in determining the nature or character of the district. The ordinance as here applied has produced an arbitrary and oppressive result, and no particular or serious suggestions in defense of its provisions have been presented for our consideration.

In *Western Theological Seminary* v. *City of Evanston*, 325 Ill. 511, this court said: "The privilege of every citizen to use his property according to his own will is both a liberty and a property right. 'Liberty' includes not only freedom from servitude or restraint, but also the right of every man to be free in the use of his powers and faculties, to pursue such occupation or business as he may choose, and to use his property in his own way and for his own purposes, subject only to the restraints necessary to secure the common welfare. (*Ruhstrat* v. *People*, 185 Ill. 133; *Frorer* v. *People*, 141 id. 171; *Haller Sign Works* v. *Physical Culture Training School*, 249 id. 436.) Both liberty and

property are subject to the police power of the State, under which new burdens may be imposed on property and new restrictions placed on its use when the public welfare demands it. The police power is, however, limited to enactments having reference to the public health, comfort, safety or welfare. An act which deprives a citizen of his liberty or property rights cannot be sustained under the police power unless a due regard for the public health, comfort, safety or welfare requires it. (*Ruhstrat* v. *People, supra; Bailey* v. *People,* 190 Ill. 28; *Bessette* v. *People,* 193 id. 334; *People* v. *City of Chicago,* 261 id. 16; *Catholic Bishop* v. *Village of Palos Park,* 286 id. 400.) The legislative determination as to what is a proper exercise of the police power is not conclusive. Whether the means employed have any real, substantial relation to the public health, comfort, safety or welfare, or are arbitrary and unreasonable, is a question which is subject to review by the courts, and in determining that question the courts will disregard mere forms and interfere for the protection of rights injuriously affected by arbitrary and unreasonable action." See, also, *City of Chicago* v. *Netcher,* 183 Ill. 104.

There being another gasoline filling station and other service stations and garages located and in operation within the same area as appellant's property, little could be said in support of the ordinance as being for the benefit of the public health, morals, safety or welfare. In our opinion the ordinance, in so far as it affects the property of appellant, is arbitrary and unreasonable and therefore void.

The judgment of the circuit court will therefore be reversed and the cause remanded, with directions to award the writ.

*Reversed and remanded, with directions.*