(No. 19791.—            )
ALBERT P. SPIES, Appellant, *vs.* THE BOARD OF APPEALS *et al.* Appellees.

*Opinion filed December 20, 1929.*

McDAVID, MONROE & MANN, for appellant.

W. J. CAREY, for appellees.

Mr. JUSTICE DUNN delivered the opinion of the court:

This appeal is from an order of the county court of Macon county affirming a decision of the zoning board of appeals of the city of Decatur, which affirmed the decision of the building inspector of the city of Decatur denying a permit to the appellant, Albert P. Spies, to erect a store building on lot 15 in block 19 of Johns' Second addition

to the city of Decatur, at the northeast corner of South Jasper and East Cantrell streets, for the reason that the lot was within the "A" residence zone, and the zoning ordinance did not permit a store building to be erected in that district without the written consent of the owners of seventy-five per cent of the property within a radius of 300 feet of the proposed building, and the application for the permit was not accompanied by such written consent.

The appellant's contention is that the provision of the zoning ordinance requiring the written consent of property owners to the erection of a store building on his lot was in conflict with the State and Federal constitutions and was unreasonable.

The original zoning ordinance of the city of Decatur, passed on April 2, 1923, was amended on July 2, 1928, by the substitution of a new ordinance revising the subject. By the revised ordinance the city of Decatur was divided into five use zones, and the appellant's lot was in the "A" residence zone. Section 3 of the ordinance provided that in the "A" residence zone no building or premises should be used, and no building should after the passage of the ordinance be erected or altered, unless otherwise provided in the ordinance, except for one or more of nine specified uses, which did not include stores of any kind. Paragraph 10 of the section authorized certain accessory buildings incidental to the nine uses previously mentioned and located on the same lot. Paragraph 11 referred to community stores, as follows: "Community stores may be established or erected for the convenience of any community at any point or place in either the 'A' or 'B' residence zones if there is presented to the building inspector, with the application for building permit, the consent in writing of the owners of seventy-five (75%) per cent of all the property within a radius of three hundred (300) feet of the proposed establishment, provided that the regulations for set-back, side-yard and rear-yard areas and height and all other

provisions of this ordinance relating to the 'A' and 'B' residence zones are complied with." "Community store" is defined in section 3 as "a small store building built for the benefit and convenience of a given community, located either in the 'A' or 'B' residence zones."

The appellant's lot is at the northeast corner of South Jasper and East Cantrell streets, fronting 42 feet on the north side of East Cantrell street and 143 feet on the east side of South Jasper street. It is a vacant lot. Immediately south of it, on the southeast corner of the intersection, is a one-story store building, facing north, which is used as a grocery and meat market. The lot at the southwest corner is vacant, and on the northwest corner is a building the lower story of which is a grocery and meat market and the upper story a residence. These store buildings were there before the passage of the ordinance.

The contention of the appellant is that the city council had not the power to subject him, in the use of his property for a purpose and in a manner in no way injurious to the public health, safety, morals or general welfare, to the uncontrolled will of the owners of neighboring property; that the provision of section 3 requiring him to get the written consent of the owners of seventy-five per cent of such neighboring property deprives him, without due process of law, of his constitutional right to make any use he chooses of his property which does not tend to injure the public health, safety or morals or interfere with the general welfare. It cannot be contended that there is anything dangerous to the public health or safety or detrimental to the public morals or the general welfare in the conduct of a community store. No objection has been made to the plans for the building. They conform, and the building, when constructed, will conform, to all the requirements of the ordinance. The permit was denied expressly because the application was not accompanied by the written consent of the owners of seventy-five per cent of the prop-

erty within a radius of 300 feet of the proposed building. This case does not involve the constitutionality of the Zoning law or of this particular ordinance except in respect to the one paragraph of section 3 which compels the appellant to hold the right, essential to the free and complete enjoyment of his property, of establishing and erecting on it a community store subject to the arbitrary, uncontrolled will of the owners of neighboring property. The single question to be decided is, Does that paragraph violate the provisions of the State and Federal constitutions providing against deprivation of property without due process of law?

The Supreme Court of the United States has declared that "the very idea that one may be compelled to hold his life, or the means of living, or any material right essential to the enjoyment of life, at the mere will of another seems to be intolerable in any country where freedom prevails, as being the essence of slavery itself." (*Yick Wo* v. *Hopkins*, 118 U. S. 356.) The same court has decided the exact question in this case. (*State of Washington* v. *Roberge*, 278 U. S. 116.) That case arose under a zoning ordinance of the city of Seattle, which by section 3 established a "first residence district," in which were permitted only the uses mentioned in eight separate clauses: (1) Single family dwellings; (2) public schools; (3) private schools in which prescribed courses of study, only, are given and are graded in a manner similar to public schools or are of a higher degree; (4) churches; (5) parks and playgrounds (including usual park buildings); (6) art gallery or library building; (7) private conservatories for plants and flowers; (8) railroad and shelter stations. Paragraph (*c*) of section 3 provided: "A fraternity house, sorority house or boarding house, when occupied by students and supervised by the authorities of a public educational institution, a private school other than one specified in paragraph (*a*) this section 3, a community club house, memorial building, nursery or greenhouse, or a building which is necessary for the

proper operation of a public utility, may be permitted by the board of public works after a public hearing. A philanthropic home for children or for old people shall be permitted in first residence district when the written consent shall have been obtained of the owners of two-thirds of the property within four hundred (400) feet of the proposed building." This ordinance was passed in 1923. Since 1914 the Seattle Title and Trust Company, as trustee, had owned and maintained a philanthropic home for aged poor, located about six miles from the business center of Seattle on a tract of about five acres. The home was a structure built for and formerly used as a private residence, large enough to accommodate about fourteen guests and usually had about that number. The trustee proposed to remove the old building and to erect in its place, at a cost of about $100,000, an attractive two-and-one-half-story fireproof house large enough to be a home for thirty persons, to be located 280 feet from Seward Park avenue, on the western boundary of the tract, and 400 feet from Lake Washington on the east, the distance between it and the nearest building on the south to be 110 feet, on the north 160 and on the west 365. Without having obtained the consent of the other land owners in accordance with the provisions of the ordinance the trustee applied to the superintendent of buildings, whose duty it was to issue permits for buildings about to be erected, for a permit to erect a new home. He denied the application solely because of the trustee's failure to obtain the consent required by the ordinance. The trustee brought a suit for *mandamus* to compel the superintendent to grant the permit, claiming the ordinance was arbitrary and repugnant to the due process and equal protection clauses of the fourteenth amendment. The Supreme Court of the State of Washington held the ordinance valid, but the judgment was reversed by the Supreme Court of the United States. In deciding the case the court quoted from *Nectow* v. *Cambridge,* 277 U. S. 183, as follows:

"The governmental power to interfere by zoning regulations with the general rights of the land owner by restricting the character of his use is not unlimited, and, other questions aside, such restriction cannot be imposed if it does not bear a substantial relation to the public health, safety, morals or general welfare." The opinion continues: "Legislatures may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities. [Citing authorities.] The right of the trustee to devote its land to any legitimate use is property within the protection of the constitution. The facts disclosed by the record make it clear that the exclusion of the new home from the first district is not indispensable to the general zoning plan, and there is no legislative determination that the proposed building and use would be inconsistent with public health, safety, morals or general welfare. The enactment itself plainly implies the contrary. The grant of permission for such building and use, although purporting to be subject to such consents, shows that the legislative body found that the construction and maintenance of the new home was in harmony with the public interest and with the general scope and plan of the zoning ordinance. The section purports to give the owners of less than one-half the land within 400 feet of the proposed building authority, uncontrolled by any standard or rule prescribed by legislative action, to prevent the trustee from using its land for the proposed home. The superintendent is bound by the decision or inaction of such owners. There is no provision for review under the ordinance. Their failure to give consent is final. They are not bound by any official duty but are free to withhold consent for selfish reasons or arbitrarily and may subject the trustee to their will or caprice. * * * The delegation of power so attempted is repugnant to the due process clause of the fourteenth

amendment." This language is perfectly applicable *mutatis mutandis* to the present case.

We have in numerous cases sustained ordinances requiring the consent of owners of property to the construction and maintenance, within a certain distance of their property, of buildings and structures of certain kinds or for certain purposes, or the establishment and conduct of certain kinds of business or occupation. These have been cases which involved a structure, business, trade or occupation properly subject to the exercise of the police power, as, for instance, livery stables, saloons, garages and bill-boards. (*City of Chicago* v. *Stratton,* 162 Ill. 494; *Swift* v. *People,* id. 534; *People* v. *Ericsson,* 263 id. 368; *Rippinger* v. *Niederst,* 317 id. 264; *Cusack Co.* v. *City of Chicago,* 267 id. 344.) The doctrine that a municipality, if possessed of the entire police power of the State, could not deprive a citizen of valuable property rights under the guise of prohibiting or regulating some business or occupation that has no tendency to injure the public health or morals or interfere with the general welfare was applied in *People* v. *City of Chicago,* 261 Ill. 16, in holding that an ordinance which prohibited the location or construction of any store for the sale at retail of goods, wares and merchandise in any block used exclusively for residence purposes without the written consent of a majority of the property owners according to frontage on both sides of the street in such block, could not be sustained as a proper exercise of the police power by the city nor as an authorized regulation of any business or occupation; and also in *People* v. *Village of Oak Park,* 331 Ill. 406, in holding a provision of a municipal ordinance defining a residence district to be the area adjacent to any building or proposed building which is to be erected, measuring 400 feet from its outer walls in every direction, within which area more than half the buildings are used or intended for residence purposes, arbitrary and oppressive where it operates to prevent the erection of a

gas filling station in a section of the city devoted chiefly to commercial pursuits, and which, considering property frontage instead of number of buildings, could be classed as a business section, there being another gasoline filling station, as well as garages, already located within the area. The case of *State of Washington* v. *Roberge, supra,* is decisive that the ordinance of the city of Decatur is repugnant to the constitutional prohibition of deprivation of property without due process of law.

The order of the county court is reversed and the cause is remanded, with directions to reverse the order of the zoning board of appeals and of the building inspector.

*Reversed and remanded, with directions.*