No. 17,293.

BOHN *v.* BOARD OF ADJUSTMENT OF DENVER.
(271 P. [2d] 1051)

Decided June 21, 1954.   Rehearing denied July 12, 1954.

Mr. WALTER F. SCHERER, for plaintiff in error.

Mr. JOHN C. BANKS, Mr. EARL T. THRASHER, Mr. FRANK A. ELZI, for defendant in error.

*En Banc.*

MR. JUSTICE KNAUSS delivered the opinion of the Court.

THE parties appear in our Court in the same order as in the trial court. We herein refer to plaintiff in error as Relator; to the Board of Adjustment under the zoning ordinance of the City and County of Denver as the Board; and to the Chief Building Inspector as Inspector.

Relator applied to the Inspector for a permit to construct an addition to his existing motel on eight lots owned by him since 1922 in the block which faces east on Wolff street between West Colfax Avenue and West 16th Avenue. The property in this block is zoned as Residence "B." The permit was refused. Relator appealed to the Board which sustained the Inspector; he then instituted the instant action in the District Court pursuant to the Denver Charter and the Zoning Ordinance. After hearing, the District Court held against him, sustaining the action of the Board. To review the judgment so entered Relator prosecutes a writ of error. The sole question involved is whether the evidence entitled Relator to the relief demanded, to wit, the issuance of a permit to add to his existing motel property.

The Board consists of five members and the Denver Charter requires the affirmative vote of four of such members to grant a petition. In the instant case three members of the Board voted affirmatively to grant Relator the permit requested and two members voted in the negative. The permit, therefore, was denied.

When Relator's petition, in which he asked for a variation from the requirements of the Zoning Ordinance under the discretionary power vested in the Board, came before it, no protests or objections thereto were presented.

The minutes of the Board, made a part of its return, disclose that its findings of fact are as follows:

"Facts: * * * 1. That the premises under consideration in the instant case is an 8 lot unimproved parcel of land having a frontage of 200 feet on Wolff Street and a lot depth of 117 feet, said lots being situate in a Residence 'B' Zone.

"2. That said lots are situate on the west side of Wolff Street, 275 feet north of West Colfax Avenue and 175 feet north of the zone line separating the Residence 'B' Zone from a Business 'C' Zone, adjacent to West Colfax Avenue.

"3. That applicant is the owner and operator of a restaurant and gasoline service station, said uses being located on the N.W. corner of West Colfax Avenue on 4 lots located in the Business 'C' Zone.

"4. That applicant is also the owner and operator of a motel located adjacent to and north of the restaurant and service station, said motel being situate on Lots 28 to 34, Inc., Tabor and Kindel's Subdivision, re-sub of Block 11, Sloans Lake Subdivision, said motel being situate adjacent to and north of the Business 'C' Zone.

"5. That applicant proposes to erect on lots 35 to 42, inc., of said Block 11, a motel, consisting of 12 sleeping units, said motel to be an addition to applicant's present motel."

It then is recited in the "Facts" that the block situate on the east side of Wolff street formerly was used as a nursery for the propagation and sale of trees, shrubs, etc., and is vacant except that the former nursery has a sales building on the corner of Wolff street and West Colfax Avenue. That the area north, northeast and northwest of applicant's premises is zoned Residence "B" and is improved with one and two-family dwellings and bungalow courts. That the west half of the block in which applicant's property is situated is vacant. That the frontage on the west side of Xavier street (the block west of Wolff street) and extending north from West Colfax Avenue to West 16th Avenue is occupied by the Florence Crittenden Home, a philanthropic institution,

542

and the Mary Donaldson Memorial Hospital. That the frontage along West Colfax Avenue, extending for many blocks to the east and west, is zoned Business "C" and Commercial "A" and is improved with business and commercial zone uses.

Section 219A-7 of the Denver charter provides: "If upon the hearing [the review by the court] it shall appear to the court that testimony is necessary for the proper disposition of the matter, it may take evidence or appoint a referee to take such evidence as it may direct, and report the same to the court with his findings of fact and conclusions of law, which shall constitute a part of the proceedings upon which the determination of the court shall be made. The court may reverse or affirm, wholly or partly, or may modify the decision brought up for review."

Pursuant to this provision of the charter the trial court directed the taking of testimony, it appearing that the Board did not make a record of the testimony offered by Relator at the time his petition was considered by it.

It is not disputed that in 1946 and 1947 the Board granted Relator a variance exactly like the one he now requests for the construction of the five last units of his motel which he erected on the lots immediately south of the site in question.

The testimony presented to the trial court disclosed the following facts in addition to those set forth in the return of the Board: The lots in question have for over thirty years been used as a public baseball park; that the Florence Crittenden Home is some 60 years old; that other houses in the neighborhood are 50 to 60 years old and some in bad disrepair; that one house north of the hospital and west of Relator's property is 65 years old, with barns as outbuildings; one house immediately north and east of Relator's property was described in the evidence as "an old barn that hasn't any water in it, no bathroom, no modern facilities of any kind, * * *

containing an outdoor privy." On the corner east and south of Relator's property a used car business is conducted, and immediately south of West Colfax Avenue on Wolff street is an eight-apartment house building built in the last two years in a Residence "B" zone; and it also appears that the Board granted an applicant a permit to convert some old houses in the same block into a motel, shortly before Relator's petition was denied.

It was established that the erection of this addition to the existing motel would not depreciate the value of the surrounding property; that Relator's lots, if used for motel units, would be worth $2500 each; and that if they had to be used for single residence purposes, they would be worth only $500 each. The Board offered no evidence to dispute that offered by Relator.

Section 616.5 of the Denver Zoning Ordinance authorizes the Board to "permit the location in *any use* district of a * * * automobile tourist court, * * *." (Emphasis supplied).

West Colfax Avenue is a through highway commonly known as U. S. Highway 40 and traverses the state from the eastern to the western boundary thereof.

Nowhere in this record does it appear that anyone even remotely claimed that the proposed use of these lots would depreciate the value of, or be injurious to, other property in the vicinity. When the Board heard Relator's appeal, the only witness who appeared was Relator. His evidence on this occasion was not recorded.

The instant proceeding, being a judicial review of the record of the Board of Adjustment, we disregard the evidence offered on the trial in the district court and predicate our decision on the record before us and the findings of fact made by the Board.

There is nothing in the return of respondents which even remotely suggests that the contemplated use of Relator's property would be injurious or detrimental to adjacent properties.

Why the Board granted Relator's application for a

variance to permit him to erect the last five units of his motel and in 1953 denied the instant request, does not appear from the record. The reason why the Inspector and the Board denied Relator's application for a variance does not appear. We must assume that it was based on the Zoning of this property as Residence "B." Had it been predicated upon injury to adjacent property because of the contemplated addition to the existing motel operation, the Board doubtless would have at least made a notation on its record that the two dissenting members were of that opinion, even though no evidence of that fact appears anywhere.

It is a fundamental principle recognized by all the authorities that any regulation or restriction upon the use of property which bears no relation to public safety, health, morals or general welfare, cannot be sustained as a proper exercise of the police power of the municipality.

In *Hedgcock, Building Inspector v. People ex rel. Reed,* 91 Colo. 155, 13 P. (2d) 264, we quoted with approval from *People v. Village of Oak Park,* 331 Ill. 406, 163 N.E. 445, where it was said: "The ordinance as here applied has produced an arbitrary and oppressive result, and no particular or serious suggestions in defense of its provisions have been presented for our consideration." This language is most appropriate when we consider the record in the instant case. Now that West Colfax Avenue has become a cross-country artery and, as determined by the Board, is lined with business and commercial uses, the character of this territory, where Relator desires to build, has changed with passage of time, the action of the Board, and the tacit assent of adjacent property owners. What at one time may have been considered residential property now has been devoted to business and commercial uses. It is very apparent from this record that the action of the Board in the instant case was arbitrary and capricious and will not stand the test set forth in *Hedgcock v. People ex rel.,* 98 Colo. 522,

57 P. (2d) 891 and *People ex rel. v. Webber*, 110 Colo. 161, 132 P. (2d) 183.

The ordinance zoning Relator's property as Residence "B" is contrary to the provisions of the Denver charter amendment which provides: "Such regulations [zoning] shall be made with reasonable consideration, among other things, to the character of the district and its peculiar suitability for particular uses, and with a view of conserving the value of the buildings and encouraging the most appropriate use of the land."

We have carefully considered the entire record and are inevitably led to the conclusion that the literal enforcement of the zoning ordinance in the instant case will result in unnecessary hardship to Relator.

In *Cross v. Bilett*, 122 Colo. 278, 221 P. (2d) 923, we quoted with approval from *Lee v. Board of Adjustment*, 226 N.C. 107, 37 S.E. (2d) 128, as follows:

"The plain intent and purpose of the statute is to permit, through the Board of Adjustment, the amelioration of the rigors of necessarily general zoning regulations by eliminating the necessity for a slavish adherence to the precise letter of the regulations where, in a given case, little or no good on the one side and undue hardship on the other would result from a literal enforcement.

"The board cannot disregard the provisions of the statute or its regulations. It can merely 'vary' them to prevent injustices when the strict letter of the provisions would work 'unnecessary hardship.' "

In the present case it appears that the surrounding area is commercial in nature and the section of the Zoning Ordinance which authorizes variances was intended to meet just such a situation with which Relator is confronted. We, therefore, conclude that when the Board failed to recognize the spirit of the ordinance, by the narrow margin of one vote, it acted arbitrarily. Its action is not supported by the record.

The judgment of the trial court is reversed and the cause remanded with direction that judgment be entered

in favor of Relator and against the Board and the Inspector directing the issuance of the permit sought by Relator.

Mr. Chief Justice Stone not participating.

*On Petition for Rehearing.*

On this 8th day of July, 1954, on petition for rehearing, petition for rehearing is stricken because of nonconformity with Rule 118 (c) of the Rules of Civil Procedure (Colo.), as amended.