(No. 34594.—

ANNA VALKANET *et al.,* Appellees, *vs.* THE CITY OF CHICAGO, Appellant.

*Opinion filed March 20, 1958.*

JOHN C. MELANIPHY, Corporation Counsel, of Chicago, (SYDNEY R. DREBIN, and JAMES R. BRYANT, JR., of counsel,) for appellant.

Mr. CHIEF JUSTICE DAVIS delivered the opinion of the court:

Plaintiffs filed complaint in the circuit court of Cook County for a declaratory judgment that the frontage-con-

sent provisions of section 136-6 of the Municipal Code of the city of Chicago are either inapplicable or invalid; that plaintiff Beverly C. Valkanet has a legal right to a license for the maintenance of a nursing home under chapter 136 of such code, without complying with the provisions of section 136-6, upon compliance with the other provisions of the chapter; and for injunction and such other relief as may be proper. Upon hearing, the trial court entered judgment, based upon evidence taken before a master in chancery, declaring the ordinance void in its application to the premises under consideration. The trial court certified that the validity of a municipal ordinance was involved and the public interest required that, if an appeal be prayed from the judgment, such appeal be taken directly to this court. The city of Chicago, defendant, appealed and the plaintiffs failed to file briefs.

This case involves the validity of an ordinance restricting the issuance of licenses for the operation of homes for the care of children or for the care "of persons who are dependent or not capable of properly caring for themselves, and shall be understood to include homes for the aged or infirm, orphan asylums, half-orphan asylums, refuges, and shelters." Municipal Code of Chicago, sec. 136-1.

Section 136-6 of the code provides:

"No city license shall be issued to any person to operate or conduct such a home in any block in which two-thirds of the buildings fronting on both sides of the street on or along which the proposed home may face are devoted exclusively to residence purposes, unless the owners of a majority of the frontage in such block and the owners of a majority of the frontage on the opposite side of the street on or along which said building faces, consent in writing to the operation or conducting of such home in such block, * * *."

Plaintiffs have an option to purchase a three-story brick residence at 1434 West Estes Street in Chicago which they

propose to use as a home for the aged, to care for not more than ten elderly persons. In the block in question there are thirteen substantial residences, a two-flat building, a two-story brick residence building housing a Jewish community center, and a garage. The area in which the property in question is located is zoned as an "apartment house" district, the fourth of ten use districts set up by the Chicago zoning ordinance. Among the permitted uses in such district are a "boarding or lodging house, hotel, hospital home for dependents or nursing home."

Plaintiffs, without attempting to secure consents from the property owners, made application for a license to operate a nursing home on the subject property. The application was denied for failure to file the necessary frontage consents required by section 136-6 of the code. Thereupon, plaintiffs brought this action.

From the complaint and the record of the proceedings below, it appears that the plaintiffs' theory is that the ordinance is void in that it is an illegal delegation of legislative power to private individuals, a deprivation of property without due process of law, and a denial of equal protection of the law.

The defendant contends that the restriction imposed on operating such homes by section 136-6 is a reasonable and proper exercise of police power, and that the consent provision for waiver of the restriction is valid.

Unaided by brief and argument of plaintiffs, we have examined the state of the law concerning the validity of "frontage consent" provisions, and, like McQuillin, have found "a decided difference of judicial view and sometimes of jurisdictional consistency as to the validity of municipal legislation of this character, not entirely explainable by varying provisions of the ordinances or by differing statutory or charter grants of authority." (8 McQuillin, Municipal Corporations, 3rd ed., p. 348.) We upheld frontage-consent provisions in *Rippinger* v. *Niederst,* 317 Ill. 264;

*Smolensky* v. *City of Chicago,* 282 Ill. 131; *Thomas Cusack Co.* v. *City of Chicago,* 267 Ill. 344, aff'd 242 U.S. 526, 61 L. ed. 472; *People ex rel. Keller* v. *Village of Oak Park,* 266 Ill. 365; *People ex rel. Busching* v. *Ericsson,* 263 Ill. 368; *City of Chicago* v. *Stratton,* 162 Ill. 494; *Swift* v. *People ex rel. Ferris Wheel Co.* 162 Ill. 534, and struck them in *Spies* v. *Board of Appeals,* 337 Ill. 507; *People ex rel. Deitenbeck* v. *Village of Oak Park,* 331 Ill. 406; and *People ex rel. Friend* v. *City of Chicago,* 261 Ill. 16.

An analysis of these decisions reveals that we have sustained frontage-consent provisions where the effect was to permit the waiver of a prohibition of a structure, business, trade or occupation properly subject to the police power, such as livery stables, saloons, garages and billboards. (*Spies* v. *Board of Appeals,* 337 Ill. 507, 513.) Yet we have consistently held that a municipality cannot deprive a citizen of a valuable property right under the guise of prohibiting or regulating some business or occupation which has no tendency to injure the public health or morals, or interfere with the general welfare. *Spies* v. *Board of Appeals,* 337 Ill. 507; *People ex rel. Deitenbeck* v. *Village of Oak Park,* 331 Ill. 406; *People ex rel. Friend* v. *City of Chicago,* 261 Ill. 16.

The prevailing view concerning such consent provisions is illustrated by two leading decisions of the United States Supreme Court. The first, *Eubank* v. *City of Richmond,* 226 U.S. 137, 57 L. ed. 156, held invalid an ordinance allowing two thirds of the abutting property owners in the block to establish a set-back line, on the ground that such enactment was, in effect, legislative action by the property owners without the benefit of any standard for the exercise of such power, and therefore an improper delegation of a legislative function. (Cf. *Gorieb* v. *Fox,* 274 U.S. 603, 71 L. ed. 1228.) The second decision, *Thomas Cusack Co.* v. *City of Chicago,* 242 U.S. 526, 61 L. ed. 472, involved a billboard ordinance in language similar to the ordinance before us. It absolutely prohibited billboards in certain dis-

tricts, but permitted the restriction to be modified with the consent of the persons most affected. The court, at 242 U.S. 526, 531, 61 L. ed. 472, 476, in distinguishing the *Eubank case,* said:

"The one ordinance permits two thirds of the lot owners to impose restrictions upon the other property in the block, while the other permits one half of the lot owners to remove a restriction from the other property owners. This is not a delegation of legislative power, but is, as we have seen, a familiar provision affecting the enforcement of laws and ordinances."

While the *Cusack* decision has been criticized, (University of Illinois 1954 Law Forum, 309, 311-312,) it has been generally followed. And, even though it is impossible to lay down a hard-and-fast rule, we conclude that if an ordinance permits a certain percentage of the property owners to impose or create a restriction upon their neighbors' property by the device of consent provisions, such limitation constitutes an invalid delegation of legislative power, but if the consent provision merely waives or modifies a lawful and reasonable legislative restriction or prohibition, it is within constitutional limitations. (2 Metzenbaum, Law of Zoning, 2d ed., p. 1067; 8 McQuillin, Municipal Corporations, 3rd ed., page 348, sec. 25.151; 1 Yokley, Zoning Law, p. 201, sec. 89; Anno: 21 A.L.R.2d 551 *et seq.*) It follows that the consent provisions of section 136-6 of the code are not an invalid delegation of legislative power. However, this does not determine that its proscription of homes for the aged is a reasonable exercise of the police power. The cases in which we have upheld prohibitions that might be waived by consent provisions have dealt with uses the location of which have a strong tendency to injure public health or morals or affect the general welfare, and have the general characteristics of a nuisance, such as saloons, (*Swift* v. *People ex rel. Ferris Wheel Co.* 162 Ill. 534,) junk shops, (*City of Chicago* v.

*Smolensky,* 282 Ill. 131,) garages, (*People ex rel. Busching* v. *Ericsson,* 263 Ill. 368,) and billboards, (*Thomas Cusack Co.* v. *City of Chicago,* 267 Ill. 344, affirmed in 242 U.S. 526, 61 L. ed. 472.)

There is no showing in this record that homes for the aged are offensive to the health, morals and welfare of the community. The property in question is located in the "apartment house" use district which includes "boarding or lodging house, hotels, hospital home for dependents or nursing home." Defendant urges that such homes are properly subject to the police power, citing *Father Basil's Lodge, Inc.* v. *City of Chicago,* 393 Ill. 246, but in that case we merely held that a municipality had the power to regulate and license the establishment of homes for the aged for the purpose of protecting the health and safety of the occupants thereof. We refrained from passing upon the validity of the frontage-consent provisions of the ordinance, since we found such provisions to be severable and without application to the appellant.

The case most analogous to the facts here is *State of Washington ex rel. Seattle Title Trust Co.* v. *Roberge,* 278 U.S. 116, 73 L. ed 210. There an ordinance, similar to the one before us, prohibited erection of homes for the aged in a "first residence district" unless two thirds of the property owners within 400 feet of the proposed site gave their consent in writing. The court held this restriction violative of due process, 278 U.S. 116, 121, 73 L. ed. 210, 213, and stated: "Legislatures may not, under the guise of the police power, impose restrictions that are unnecessary and unreasonable upon the use of private property or the pursuit of useful activities. * * * The facts disclosed by the record make it clear that the exclusion of the new home from the first district is not indispensable to the general zoning plan. And there is no legislative determination that the proposed building and use would be inconsistent with public health, safety, morals or general welfare. The enact-

ment itself plainly implies the contrary. The grant of permission for such building and use, although purporting to be subject to such consents, shows that the legislative body found that the construction and maintenance of the new home was in harmony with the public interest and with the general scope and plan of the zoning ordinance."

In its opinion the court also distinguished *Thomas Cusack Co.* v. *City of Chicago,* 242 U.S. 526, 61 L. ed. 472, relied on by defendant, on the ground that the facts there were sufficient to warrant the conclusion that billboards were liable to endanger the safety and decency of the district involved and held that a home for the aged is clearly distinguishable "from such billboards or other uses which by reason of their nature are liable to be offensive." 278 U.S. 122, 73 L. ed. 214.

Similar results have been reached in cases involving an "old ladies home," (*Women's Kansas City St. Andrew Society* v. *Kansas City,* (Mo.) 58 F.2d 593,) a church, (*State* v. *Hill,* 59 Nev. 231, 90 P.2d 217,) a retail store, (*Spies* v. *Board of Appeals,* 337 Ill. 507,) and a school, (*Concordia Collegiate Institute* v. *Miller,* 301 N.Y. 189, 93 N.E.2d 632.)

Defendant has not cited, nor have we found, any case upholding the exclusion of homes for the aged from a use district similar to the one in question, either by application of frontage-consent provisions or otherwise. Defendant, however, urges that *Shepard* v. *City of Seattle,* 59 Wash. 363, 109 Pac. 1067, is analagous to the case at bar. We cannot agree. The court there upheld an ordinance which declared insane asylums to be a public nuisance, and provided for their abatement as such, subject to the written consent of any property owner within 200 feet. Such ordinance, which contained a legislative finding that the proposed use is a public nuisance, is clearly inapposite here. *State of Washington ex rel. Seattle Title Trust Co.* v. *Roberge,* 278 U.S. 116, 122, 73 L. ed. 210, 214.

In the case at bar there is neither legislative finding that the proposed use is a public nuisance, or that it is apt to be such when operated in an apartment-house-use district, nor satisfactory evidence tending to show that the maintenance of the home will work an injury, annoyance or inconvenience to any property owner. On the contrary, the general zoning plan of the city of Chicago declares a nursing home to be appropriate in an apartment-house-use district. The record fails to disclose a rational basis for subjecting homes for the aged to the requirement of frontage consents and is without evidence to support a conclusion that the proposed use has any different effect on the public health, welfare, safety and morals than the other permitted uses in the district.

Since we find no basis for the exercise of the police power in prohibiting the home for the aged in the apartment-house-use district, the ordinance as applied to this proposed use is an unconstitutional deprivation of property without due process of law. (*Spies* v. *Board of Appeals,* 337 Ill. 507; *State of Washington ex rel. Seattle Title Trust Co.* v. *Roberge,* 278 U.S. 116, 73 L. ed. 210.) Accordingly, the judgment of the trial court is affirmed.

*Judgment affirmed.*