THE STATE, EX REL. ANSHE CHESED CONGREGATION,
APPELLEE, *v.* BRUGGEMEIER ET AL., APPELLANTS.

(No. 22771—Decided October 19, 1953.)

*Messrs. Halle, Haber, Berick & McNulty,* for appellee.

*Messrs. Green, Lausche & Wilmot* and *Mr. Perry L. Graham,* for appellants.

SKEEL, J. This appeal comes to this court on questions of law from a judgment for the relator entered by the Common Pleas Court of Cuyahoga County. The

action is one in mandamus. The relator is a nonprofit corporation organized for religious purposes and is generally known as the ''Euclid Avenue Temple'' now located at East 82nd Street and Euclid Avenue in the city of Cleveland, Ohio. The respondents are the elected councilmen and the Building Commission of the village of Beachwood in Cuyahoga County, Ohio. The relators are now the owners of a parcel of land located on the northerly side of Fairmount Boulevard in said village, containing about 31½ acres of land, which was purchased for the purpose of building a place of worship for its members.

At the time the relator purchased said property, there was in full force and effect a zoning ordinance classifying the uses to which property in specified districts could be devoted. The district in which the relator's land was located is zoned for single-family residences.

The zoning ordinance authorized the village inspector of buildings, with the consent of the council, to issue a special use permit in certain cases which include the erection of a church, within a residence zone, providing it would serve the public convenience and welfare and would not substantially and permanently injure the appropriate use of the neighboring property. A number of such permits have heretofore been granted by the council for golf ranges, schools, churches and the like.

In August 1951, three years after the purchase of the property, an application for a special permit was made, the plans of the proposed temple having previously been filed with the village. Upon final hearing the village council denied the application.

This action was then filed in the Common Pleas Court, seeking an order compelling the village to permit the relator to build its temple on the land purchased in the respondent's village for that purpose.

From the order of the Common Pleas Court directing the respondents to issue said building permit, this appeal was taken. The respondents claim the following errors:

"1. The trial court erred in rendering judgment, contrary to law, against the defendants-appellant on the petition of the plaintiff-appellee.

"2. The trial court erred in overruling the motion of defendants-appellant made at the close of all the evidence for a judgment in their favor. .

"3. The trial court erred in overruling the motion of the defendants-appellant for a new trial on the grounds therein set forth.

"4. The trial court erred in its findings of fact in that, to the extent that such findings are pertinent to the issues, they were not supported by any evidence.

"5. The trial court erred in its findings of fact in that, to the extent that such findings are pertinent to the issues, they were not supported by the weight of the evidence.

"6. The trial court erred in holding that the evidence showed an abuse of discretion on the part of defendants-appellant in the performance of the discretionary duty imposed upon them by the zoning ordinance pleaded in the petition.

"7. The trial court erred in its finding numbered '(20)' and in basing its holding upon a view of the site and surrounding area, when no such view was presented during the trial and could only have been one extrajudicially made by the trial judge without the knowledge or consent of the defendants-appellant.

"8. The trial court erred in that its finding of an abuse of discretion on the part of the defendants-appellant is not supported by the evidence contained in the record.

"9. The trial court erred in that its decision is contrary to law."

The trial court in entering judgment for the relator returned findings of fact and conclusions of law. The findings of fact are supported by credible evidence as is disclosed by the bill of exceptions, except as to finding No. 20 which in part must have been found upon a view of the territory. If it be true that the court considered as evidence what was observed upon view as the basis in part of finding of fact No. 20, which finding has to do with the character of the surrounding area, that is, that the area is in fact not rural in character but only at present sparsely built up as are many parts of adjoining suburbs, such conduct on the part of the court in ascertaining such facts from a view would not be prejudicial to the rights of respondent for the reason that such finding is not material to the legal questions here presented and at least in part is supported by the evidence.

Holding as we do that the findings of the court on questions of fact are supported by credible evidence and that such findings are not against the manifest weight of the evidence, the only question upon which this appeal can be grounded is whether or not the judgment is contrary to law when tested by the findings of fact.

The ordinance (1946-25, section 17, referred to above) under which relator claims the right to a permit to build the proposed temple or church reads as follows:

"Permit for the location of a 'class U-5' use in class U-1 district may be given by the inspector of buildings by and with the consent of the council when such location will substantially serve the public convenience and welfare and will not substantially and permanently injure the appropriate use of neighboring property."

Only two circumstances are provided as qualifying the relator's right to build its temple in a U or class 1 district. First, that it substantially serve the public

convenience and welfare, and, second, that it must not substantially and permanently injure the appropriate use of neighboring property. In other words, the zoning ordinance provides for the construction of churches in the residence districts of the village after the village council upon application determines the fact situation provided for by the zoning ordinance favorable to the applicant, that is, that the erection of such church will substantially serve the public convenience and welfare and its erection will not substantially and permanently injure the appropriate use of neighboring property.

The city council in dealing with the question of granting a special permit under section 17, *supra*, acts in a ministerial or administrative capacity. Its determination of facts are conclusive except where the conclusions are such as to show a clear abuse of discretion. An action in mandamus is the proper way to test such question. See *State, ex rel. Vaad Hachinuch Hacharedi* v. *Baxter et al., Zoning Comm.*, 143 Ohio St., 221, 74 N. E. (2d), 242, paragraph two of the syllabus:

''In the absence of evidence of an abuse of discretion a writ of mandamus will not be issued to compel a municipal zoning commission to issue a permit to an owner of residence property authorizing its use for school purposes under a valid ordinance prohibiting such use unless in the judgment of the commission the public convenience and welfare will be served and the appropriate use of neighboring property will not be substantially and permanently injured thereby.''

In *Nectow* v. *City of Cambridge*, 277 U. S., 183, 187, 72 L. Ed., 842, 48 S. Ct., 477, the court said:

''We quite agree with the opinion expressed below that a court should not set aside the determination of public officers in such a matter unless it is clear that their action 'has no foundation in reason and is a mere arbitrary or irrational exercise of power having no substantial relation to the public health, the public

morals, the public safety or the public welfare in its proper sense.' ''

The finding of the council upon relator's application is contained in a resolution which provides in substance, as set forth in a letter from the mayor of the village, that the building of the temple ''would not serve the public convenience and welfare and would substantially and permanently injure the appropriate use of neighboring property as provided in section 17 of the zoning ordinance of the village of Beachwood. Such finding was based upon evidence brought before the council that a great majority of the congregation of the proposed church would be nonresidents of the village of Beachwood, and that the size of the congregation, exceeding by several times the population of the village, would be detrimental to the public safety, welfare and convenience of the village.''

The facts which the council considered as justifying the refusal of relator's application for a permit are as follows:

The population of the village in 1952 was about 1,800 persons. The membership of Euclid Avenue Temple is 1,801 families which makes the total membership a little in excess of 5,000 persons, all but about two or three per cent of whom live outside Beachwood Village. Religious services are held for the congregation on Friday evening, Saturday morning and Sunday morning, at which services the attendance seldom exceeds 400 in the Sunday School or children's department on Saturday and Sunday and not over 350 at any of the adult meetings. The weekday activities of sewing circles and club meetings are not attended in large numbers and in no case to exceed 200. Twice, or at the most three times a year, on special holy days as many as 2,500 are in attendance divided into two separate services on each day.

The temple, with a front dimension of 370 feet and a total depth of 400 feet, is to be of fireproof construction all on the ground level and consisting of a main sanctuary designed for 1,000 permanent seats, a social hall large enough to seat 1,000 people, a junior temple with a capacity of 750, a library, executive offices, schoolrooms and other rooms providing necessary facilities generally found in a church or temple, including a residence for the caretaker. The temple is to front on Fairmount Boulevard with a setback of 300 feet. It will be located 164 feet east of the west property line of relator's 31½ acres of land, which tract has 600 feet front on Fairmount Boulevard and is 2,300 feet deep, with extra frontage on Fairmount Boulevard to the west, of 120 feet by 175 feet. The easterly side yard is 80 feet measured from the most easterly wings of the building to the easterly property line. The entrance driveway leads from Fairmount Boulevard, a two-lane highway, the east-bound lane of which is in Shaker Heights and the west-bound lane in Beachwood Village, which driveway of the temple leads to an off-street parking area large enough to adequately take care of general needs, that is, space to park between 300 and 350 automobiles with room for expansion.

There are no cutover facilities from the east to the west roadways of Fairmount Boulevard at the entrance and exit driveways of the proposed temple. The nearest cutover to the west is at Edgewood Road some 300 feet to the west of the entrance driveway, and the next cutover is 500 or 600 feet east of the exit driveway. The police department of the village consists of five men, one of whom is designated as the chief of police, who is also the chief of the voluntary fire department. The equipment of the fire department consists of a secondhand pumper. The fire de-

partment is supported in case of emergencies by a contract with Shaker Heights to send its equipment if not in use at the time of such emergency.

An examination of the record shows conclusively that the basic reason for refusing relator's application for a special permit to build its temple in the village was the size of relator's congregation and the fact that not more than twenty families belonging to such congregation reside in the village.

It must be observed that a village, which is contiguous to and a part of a great metropolitan area from which it derives its very existence, cannot arbitrarily refuse within reasonable limits to contribute its share to the general welfare of the community as a whole.

The membership of a religious institution is not confined within municipal boundaries. People seek out the church of their choice without concern as to the political subdivision in which it may be located. From the evidence as to the present facilities for religious services in the village, there can be no doubt that a great majority of the 1,800 residents of Beachwood attend devotional services outside its physical boundaries. The ground for refusing the permit, that the great majority of relator's members live outside the village of Beachwood, is without substance in fact or law.

Another ground for refusing the permit, as stated in the resolution, was that it "would be detrimental to the public safety, welfare and convenience of the village." This language is not found in section 17 of the ordinance (*supra*). The words used in the ordinance are affirmative in character. They are "* * * will substantially serve the public convenience and welfare * * *." What the council in passing the zoning ordinance had in mind in providing the conditions under which a special permit would be issued, was the kind or character of the service to be rendered or conducted

in the building or on the property, and the word "public" referred to people generally and not just to the citizens of Beachwood. Public safety, in the sense of traffic control, is not mentioned in the ordinance. Yet much consideration was given to street congestion although there is little or no credible evidence that congestion will result from the normal activities of the relator. Some concern is also presented with regard to the financial burden which will fall upon the village because of the building and operation of relator's temple, particularly in the safety department, such financial burden being increased by the fact that the property involved will be removed from the tax duplicate. It has long been the public policy of the state of Ohio that property entirely devoted to religious, charitable or educational purposes shall be exempt from the ordinary burdens of taxation. This rule of law, which is universally recognized, is a public recognition of the importance of these voluntary organizations to the well being of our community life. No municipal corporation can justly refuse a permit to build a church only because the property will no longer be subject to taxation.

It is also said in the resolution that the temple of the relator will not serve the public welfare. How it is possible to hold that a religious institution which has for over 100 years been one of the outstanding centers of religious education in greater Cleveland, devoting its services not only to the devotional and religious needs of its members but in a broad sense contributing to the welfare of all the people of the community through its interdenominational activities, does not serve the public welfare is hard to understand. Every religious institution contributes to the common good or general welfare of the whole community, even though it be attended by a particular group or is denominational in character. A demo-

cratic society, where every man must unselfishly devote some part of his energy in the interest of good government, cannot succeed without the moral and spiritual influence of the church.

The place of the church is to be found in that part of the community where the people live. It is to be associated with the home. Its influence is concerned with family life. It is an institution to which we look for leadership in furtherance of the brotherhood of man, in molding the moral progress of our children and sustaining and giving strength to purity of our family life. To hold that a church is detrimental to the welfare of the people is in direct contradiction of historical truths and evidences a failure to recognize basic fundamentals of a democratic society.

In the case of *State, ex rel. Synod of Ohio of United Lutheran Church,* v. *Joseph,* 139 Ohio St., 229, 39 N. E. (2d), 515, 138 A. L. R., 1274, paragraphs two, three and four of the syllabus provide:

"2. A municipal zoning ordinance which provides that 'in class I districts, single family dwelling houses only * * * shall be permitted * * * provided that * * * churches, schools, public libraries * * * may be erected and used within such district by special permit granted by the zoning commission and the village council' permits churches to be erected in class I districts but subject to the imposition of reasonable restrictions.

"3. When under such ordinance the village commissioners sit in joint session with the zoning commission to pass upon applications for special permits, they are acting in an administrative capacity only.

"4. Refusal of a special permit to erect a church in a residential district in pursuance of an administrative policy that no church shall be erected in such district while property in the business district is still available,

bears no substantial relation to the public health, safety, morals or general welfare, and amounts to an unreasonable and arbitrary interference with the rights of private property guaranteed by Sections 1 and 19, Article I of the Ohio Constitution, and Section 1 of the Fourteenth Amendment to the federal Constitution.''

And on page 243 the court said:

''We have been unable to find any reported Ohio case, dealing directly with the exclusion of these humanitarian noncommercial uses from a residential district. In other jurisdictions such attempted exclusions by the zoning authorities have generally not survived court review.'' (Then follows many supporting authorities.)

And on page 244 the court said:

''The infrequency of the attempts of municipal authorities to prevent the erection of churches in residential districts is attested to by the paucity of reported cases dealing with this precise question. We have found but three: *Westminster Church* v. *Building Inspector of Omaha,* 108 Neb., 859, 189 N. W., 617; *State, ex rel. Howell,* v. *Meador, Mayor,* 109 W. Va., 368, 154 S. E., 876; *State, ex rel. Roman Catholic Bishop of Reno,* v. *Hill,* 59 Nev., 231, 90 P. (2d), 217. In all of these the decision was in favor of the church.''

One other provision of section 17, *supra,* of the zoning ordinance is that the building must ''not substantially and permanently injure the appropriate use of neighboring property.'' The only credible evidence introduced on this part of the case was to the effect that neighboring property will not be injured by the building of relator's temple.

We find that upon a complete analysis of the evidence, and in the light of the surrounding circumstances, the action of the council in refusing a special permit constituted an abuse of its discretion with re-

spect to an administrative act and the court was therefore required to order the respondent to issue a special permit to enable relator to build its temple.

We therefore affirm the judgment of the trial court.

*Judgment affirmed.*

Hurd, P. J., and Kovachy, J., concur.