No. 19,519.

THE CITY OF ENGLEWOOD, ET AL. *v.*
APOSTOLIC CHRISTIAN CHURCH, ET AL.
(362 P. [2d] 172)

Decided May 1, 1961.

Mr. JOSEPH W. ESCH, for plaintiffs in error.

Messrs. CREAMER & CREAMER, for defendants in error.

*En Banc.*

Mr. Justice Moore delivered the opinion of the Court.

Plaintiffs in error will be referred to as Englewood, and defendants in error as the church or by the names of the individuals as circumstances may require.

The action was commenced by the church and Herman and Esther Hess against Englewood, its Board of Adjustment and Appeals and its Building Inspector, seeking relief by declaratory judgment and otherwise with relation to certain portions of the Englewood Zoning Ordinances which they alleged to be invalid.

The case was tried upon stipulated facts, which so far as pertinent are as follows: Mr. and Mrs. Hess had arranged to give the church a tract of land for the purpose of constructing a church building thereon and plans and specifications therefor were prepared. Application was made to Englewood for a building permit, which was denied.

In none of the single-family or two family residence districts established by the zoning ordinance of Englewood can land be used for church purposes as a use of right. Instead, it is provided that "religious and educational institutions," which by definition in the ordinance includes churches and other places of worship including Sunday School buildings and other accessory buildings and incidental nonprofit recreational facilities, are permitted as "conditional uses," "provided the public interest is fully protected and * * * uses are approved by the board;" meaning the defendant Board of Adjustment.

Only in R-3 apartment districts is a church a use by right, it being provided in section 8 of the ordinance that permitted principal uses in an R-3 multi-family residential district include "(g) Institutions — educational, philanthropic, religious and eleemosynary." In the commercial and industrial districts a church is barred and

may not exist at all, being neither a permitted use nor a conditional use.

In an endeavor to comply with the prescribed administrative procedures of the City of Englewood, Mr. and Mrs. Hess and the church, having been denied a permit to build a church edifice, in February 1960 filed a petition for relief before the Board of Adjustment and Appeals which considered the petition at a special hearing on February 10, 1960. At that hearing "verification was made that the applicant had met requirements of the Board and the above premises had been posted as designated. Mr. Hess and attorney for the applicant, Walter Irwin, presented a drawing of the proposed church and explained seating capacity, *showing that parking is adequate for the building.*" The Board of Adjustment and Appeals denied the petition asserting that " * * * the public interest would not be fully protected as set forth in Article IV, section 3, paragraph 12 of the Zoning Ordinance."

The trial court reversed the order of the Board of Adjustment and Appeals and directed the city to issue a permit for the erection of the church building. Englewood seeks review of that judgment by writ of error.

As grounds for reversal it is contended by counsel for Englewood that the ordinance prohibiting the erection of a church building in single-family and double-family residence districts contains sufficient standards for the use and direction of the Board of Adjustment and Appeals and does not offend constitutional provisions with relation to the existence of such standards; that Englewood has the power to restrict the uses to which real estate may be put and to prevent by zoning ordinances the erection of church buildings in such areas as it shall determine; and that the constitutional rights of the church and Mr. and Mrs. Hess are not violated by the zoning ordinance of Englewood.

Counsel for the plaintiffs present pertinent argument under four captions as follows:

"A.  The restrictions placed by Colorado upon its zoning laws preclude any limitations upon use or vestiture in administrative bodies of discretion to bar uses for church purposes in residential districts.

"B.  The Courts of this land have uniformly, save for an eccentric and improper California rule, held that a church may not be barred from any area by a zoning ordinance, and that administrative discretion of the sort here sought to be countenanced is void.

"C.  The decision of the City of Englewood with relation to churches is apparently a decision of the administrative board, given discretion to allow churches, to adopt a policy of refusal of churches on some sort of nebulous public welfare ground. A fixed policy of exclusion would be void."

We restate and give adherence to the basic concepts of constitutional law. In *Jones, et al. v. Board of Adjustment,* 119 Colo. 420, 204 P. (2d) 560, we said:

"The right to the use and enjoyment of property for lawful purposes is the very essence of the incentive to property ownership. The right to thus use property is a property right fully protected by the due process clause of the federal and state Constitutions. The use to which an owner may put his property is subject to a proper exercise of the police power. The so-called police power is the authority under which zoning ordinances have been universally upheld. In every ordered society the state must act as umpire to the extent of preventing one man from so using his property as to prevent others from making a corresponding full and free use of their property. Thus, under the police power, zoning ordinances are upheld imposing limitations upon the use of land, provided, however, that the regulations are reasonable, and provided further that the restrictions in fact have a substantial relation to the public health, safety, or general welfare.

"It is elementary that an owner of property has the right to put his property to any legitimate use, unless

the contemplated use is prohibited by the legislative arm of government through a proper exercise of the police power. * * * "

In *People v. Norvell,* 368 Ill. 325, 13 N.E. (2d) 960, we find the following pertinent statement:

"The privilege of a citizen to use his property according to his will is not only a liberty but a property right, subject only to such restraints as the common welfare may require, and while new burdens may be placed on the property when the public welfare demands it, this power is limited to enactments *having direct reference to the public health, comfort, safety, morals and welfare."* (Emphasis supplied.)

■ The term "property" as used in the due process clause of the constitutions, both state and national, includes the right of the citizen to make any legitimate use or disposition of the asset owned, and he cannot be deprived of any of these essential attributes of property unless the restraint is reasonably necessary in the protection of the public morals, health, safety or welfare.

In *Buchanan v. Warley,* 245 U.S. 60, 38 Supreme Court Reporter 16, we find the following:

"Property is more than the mere thing which a person owns. It is elemental that it includes the right to acquire, use, and dispose of it. The Constitution protects these essential attributes of property."

■ It is well established in the law that whether an act of a legislative body adopted as a police regulation has any reasonable connection with public health, morals, safety or welfare, is a question for the determination of the judiciary. This court has stated that any such regulation "must bear a fair relation" to those objectives and must "tend to promote or protect the same." *Sapero v. State Board of Medical Examiners,* 90 Colo. 568, 11 P. (2d) 555. To hold otherwise would be to examine an act without reference to its constitutional validity thus surrendering the jurisdiction of the courts to legislative findings in constitutional matters.

We agree with the conclusion of the Supreme Court of Washington as expressed in *State v. City of Wenatchee,* 50 Wash. (2d) 378, 312 P. (2d) 195, from which we quote the following:

"Generally, zoning ordinances which wholly exclude churches in residential districts have been held to be unconstitutional. Apparently, such provisions have not survived court review for the generally-stated reason that an absolute prohibition bears no substantial relation to the public health, safety, morals, or general welfare of the community."

The opinion of the Washington court cites numerous cases.

In *Curran Co. v. Denver,* 47 Colo. 221, 107 Pac. 261, we find pertinent language as follows:

"The cut of the dress, the color of the garment worn, the style of the hat, the architecture of the building or its color, may be distasteful to the refined senses of some, yet government can neither control nor regulate in such affairs. The doctrines of the Commune invest such authority in the state, but ours is a constitutional government based upon the individuality and intelligence of the citizen, and does not seek, nor has it the power, to control him, except in those matters where the rights of others are injuriously affected or imperiled. 'The toleration of such power on the part of the government would be conceding to it the right of controlling every man, and directing what road he shall travel in the "pursuit of happiness." Thus the freedom of the citizen would be lost in the despotic will of the government, and, under the semblance of liberty, we should have the essence of tyranny.' "

We recognize the fact that this language was composed prior to the adoption of zoning laws, and the courts generally have expanded the conception of "general welfare" with relation to such laws; nevertheless it points up the dangers to be guarded against in imposing un-

necessary and unreasonable restrictions on freedom of action.

We hold that the blanket exclusion of churches from single and double family residence districts, as attempted by the ordinance in question, was not in furtherance of the health, safety, morals or general welfare of the community. Even under the broadened conception of "general welfare" as outlined in the zoning cases cited in *Cross v. Bilett*, 122 Colo. 278, 221 P. (2d) 923, this ordinance cannot be upheld.

The judgment is affirmed.

MR. JUSTICE SUTTON and MR. JUSTICE McWILLIAMS concur in the result.

MR. JUSTICE McWILLIAMS specially concurring:

Zoning ordinances which purport to regulate and control the new construction of churches in a given zoned area are generally divided into three types: (1) those which expressly authorize the location of a church in a given zoned area; (2) those which purport to expressly exclude or ban churches from a given zoned area; and (3) those which are "permissive" as to the location of a church within a particular zoned area. The latter type permits a church to locate in a given zoned area only after obtaining a permit therefor as the result of favorable action by an administrative body designated to consider such requests. The zoning ordinance of Englewood with which we are here concerned is of the latter or "permissive" type. In other words the zoned area where plaintiff church (hereafter referred to as the plaintiff) seeks to locate is *not* one where the ordinance contains a blanket exclusion of all churches. Rather it is an area where the right of a church to locate therein is permissive rather than absolute. The zoning ordinance in question also provides that the decision as to whether a church shall be permitted to locate in this particular residential area rests with the Board of Adjustment.

In the instant case the plaintiff sought authorization from the Board of Adjustment to build its church in the so-called "permissive area" and additionally sought in connection therewith a building permit from the building inspector. Both of these requests were denied. The Board of Adjustment in denying plaintiff's request stated:

"That after considering all the evidence, including the plans presented by the applicant for the church building, it is the decision of the Board that the variance cannot be justifiably granted; that the request, if authorized, *would substantially and permanently injure the appropriate use of adjacent conforming property* and thus be against the provisions of Article II, section 7, paragraph 2 (e) of the Englewood zoning ordinance. It is the further finding of the board that to allow the variance, the *public interest* would not be fully protected as set forth by Article IV, section 3, paragraph 12 of the zoning ordinance." (Emphasis supplied.)

Following denial of its request, plaintiff brought this action in the district court to compel the building inspector to issue the building permit and requesting a declaration that the zoning ordinance in so far as it purports to ban or limit the construction of a church in the area involved be declared unconstitutional. Finally it is alleged that the acts of defendants in denying the requested permits were arbitrary, capricious and in excess of their authority.

All pertinent facts were stipulated and no oral testimony was offered by either party. The trial court granted the relief prayed and held the portion of the zoning ordinance with which we are concerned to be in violation of the First and Fourteenth Amendments to the United States Constitution and Article II, section 25, of the Colorado Constitution, and additionally held that the administrative acts of all defendants were arbitrary.

Basically three questions are posed by the record before us: (1) Is that portion of the zoning ordinance lim-

iting and making permissive the right of a church to locate in this particular zoned area constitutional? (2) If so does the zoning ordinance contain adequate standards to govern the Board of Adjustment in exercising its discretionary power, or does it constitute an unlawful delegation of legislative power? (3) If the answer to the preceding questions be in the affirmative, then in denying plaintiff's application, did the Board act arbitrarily and capriciously?

Proceeding first to consideration of the constitutionality of a zoning ordinance of the so-called "permissive" type. It is my considered judgment that such ordinance is constitutional and does not impinge on plaintiff's constitutionally protected rights. The matter is one of first impression in Colorado. Cases from other jurisdictions draw a clear distinction between zoning ordinances which ban a church from a given area, and those which give only a permissive right to locate therein. The weight of authority is that an ordinance which bans a church absolutely from a given area is unconstitutional. It should be noted, however, that both California and Florida uphold the constitutionality of even this extreme type of zoning ordinance. See *Presiding Bishop etc. v. Porterville,* 90 Cal. App. (2d) 656, 203 P. (2d) 823, and *Miami Beach United Lutheran Church v. Miami Beach* (Fla.), 82 So. (2d) 880.

However, the weight of modern authority is that a permissive ordinance is constitutional and the action of a zoning board in denying an application of a church will be upheld *if and only if* there be substantial evidence tending to show that the granting of the permit would be detrimental to the health, safety, morals or general welfare of the community. See *State of Washington ex rel. Wenatchee Congregation of Jehovah's Witnesses v. The City of Wenatchee, et al.,* 50 Wash. (2d) 378, 312 P. (2d) 195; *Milwaukie Company of Jehovah's Witnesses v. Mullen, et al.,* 214 Ore. 281, 330 P. (2d) 5; *Diocese of Rochester v. Planning Board of Brighton,* 1

N.Y. (2d) 508, 136 N.E. (2d) 827; *State ex rel. Anshe Chesed Congregation v. Bruggemeier,* 97 Ohio App. 67, 115 N.E. (2d) 65, and *West Hartford Methodist Church v. Zoning Board of Appeals,* 143 Conn. 263, 121 A. (2d) 640.

Believing the particular type of zoning ordinance here under attack to be constitutional, I accordingly disassociate myself from the language of the majority opinion, which characterizes that portion of the zoning ordinance with which we are concerned as a "blanket exclusion of churches from single and double family residence districts." As I understand the ordinance under attack its provisions are "permissive," hence I deem it to be constitutional and not in violation of the First and Fourteenth Amendments to the U. S. Constitution or Article II, section 25 of the Colorado Constitution.

Without going into great detail it is also my conclusion that the Charter of Englewood and this zoning ordinance contain sufficient standards and directions to the end that the Board of Adjustment does not have unbridled discretion to grant or deny permits, but that its action must be consonant with the standards set forth in the Charter and Municipal Ordinances of Englewood.

The final question is whether the Board of Adjustment was justified in denying plaintiff's application, or whether such denial was arbitrary and capricious? Upon careful examination of the record I am convinced that evidence of any real substance to justify the action of the Board of Adjustment is totally lacking. Indeed the reasons given by the Board are in themselves rather nebulous and ephemeral, it having assigned only two reasons for denying plaintiff's application: (1) to grant the request would "substantially and permanently injure the appropriate use of adjacent and conforming property," and (2) that if the variance was allowed "the public interest would not be fully protected."

Zoning regulations are only justified on the ground that they protect and promote the general welfare relat-

ing to health, morals and safety. It would be difficult to argue that the location of a church even in a residential area would *adversely* affect its health or morals! The reported cases seem to uphold the action of a Board of Adjustment in denying the application of a church to build in a residential area *if and only if* there is a strong showing that to permit such would endanger the public safety because of the greatly increased flow of traffic and resulting congestion, fumes, noise and the like. No such showing was made in the instant case and indeed the Board of Adjustment expressly commented in the minutes of its meeting that plaintiff's plan disclosed "that parking is adequate for the building." The possible depressive effect on property values by the erection of a church in a residential zone is not in itself sufficient ground for denying a permit for construction of a church. See *Diocese of Rochester v. Planning Board of Brighton,* supra, and for an excellent and complete annotation on this general subject see 74 A.L.R. (2d) 379.

In *Bohn v. Board of Adjustment of Denver,* 129 Colo. 539, 271 P. (2d) 1051, this Court said: "It is a fundamental principle recognized by all authorities that any regulation or restriction upon the use of property which bears no relation to public health, morals or general welfare cannot be sustained as a proper exercise of the police power of the municipality." In the instant case the action of the Board of Adjustment in denying plaintiff's application "bears no relation to public health, morals or general welfare [and] cannot be sustained as a proper exercise of the police power of the municipality." The trial court was correct in vacating the action of the Board of Adjustment with direction that the application be granted and the building permit issued.

For the reasons above stated, I concur in the result reached by the majority.

I am authorized to state that MR. JUSTICE SUTTON concurs in this specially concurring opinion.