**The CITY OF COLORADO SPRINGS, a Home Rule City and a Colorado Municipal Corporation, Plaintiff–Appellee,**

v.

**Richard BLANCHE and Faith Bible Fellowship International, a Colorado Nonprofit Corporation, Defendants–Appellants.**

No. 87SA150.

Supreme Court of Colorado, En Banc.

Sept. 12, 1988.

James G. Colvin, II, City Atty., Michael J. Heydt, Chief Litigation Atty., Colorado Springs, for plaintiff-appellee.

Roger W. Westlund, Thornton, for defendants-appellants.

Gibbs & Craze Co., L.P.A., David C. Gibbs, Jr., Charles E. Craze, Daniel Jon Lomis, Terry L. Hamilton, Cleveland, Ohio, for amicus curiae Christian Law Assn.

ERICKSON, Justice.

Richard Blanche (Blanche) and Faith Bible Fellowship International (Faith Bible), appellants, appeal the entry of a permanent injunction, and finding and penalty for contempt for violation of the injunction.

This appeal raises several constitutional and procedural issues which lack substantial merit. Preceding this appeal were several administrative proceedings, a civil rights action in the United States District Court for Colorado, a number of hearings that culminated in the district court's entry of a permanent injunction, and contempt proceedings for appellants' failure to comply with the district court's injunctive orders. Interlaced with the issues presented on this appeal are the same or similar issues that were first raised in the court of appeals, and dismissed when the appellants failed to perfect the appeal. We affirm the district court.

Faith Bible owned and operated a church in Colorado Springs that was sold in April 1985. Thereafter, Faith Bible purchased residential property at 2804 Country Club Circle in Colorado Springs. Subsequently, title was conveyed to Blanche and his wife. Faith Bible is a Colorado nonprofit corporation with 501(c)(3) tax exempt status from the Internal Revenue Service. Blanche and Faith Bible commenced, organized, and institutionalized religious activities within the residence knowing that the property was located in an R–1 6000 zone. In an R–1 6000 zone, religious institutions are not allowed as a permitted use, but may be allowed as a conditional use. In Colorado Springs, religious institutions are allowed as principal permitted uses in eight zones,[1] and nine zones permit religious institutions as conditional uses.[2] Neither of the appellants filed an application for permission to conduct religious activities as a conditional use.

Richard Blanche, who is the pastor for Faith Bible, and his family lived in the Country Club Circle home. The residence is a four bedroom home with a family room containing a piano and approximately 50 folding chairs set up in rows facing a podium. Blanche conducted religious services and other congregational activities at the home four times a week. These activities, which typically included sixty to seventy-

---

1. Religious institutions are allowed as principal permitted uses in the following zones:

    Zone PUD, *see* Colorado Springs, Co., Code (Code) § 14–3–104(c) (1980); Zone R–4, *see* Code § 14–3–703(6) (1980); Zone R–5, *see* Code § 14–3–803(6) (1980); Zone OR, *see* Code § 14–3–1103(2) (1980); Zone OC, *see* Code § 14–3–1203(3) (1980); Zone C–5, *see* Code § 14–3–1503(51) (1980); Zone C–6, *see* Code § 14–3–1603(1) (1980); and Zone SU, *see* Code § 14–3–2203(6) (1980).

2. The zones allowing religious institutions as conditional uses are:

    Zone A, *see* Colorado Springs, Co., Code (Code) § 14–3–204(1) (1980); Zone R, *see* Code § 14–3–304(6) (1980); Zone R–1 9000, *see* Code (Code) § 14–3–404(2) (1980); Zone R–1 6000, *see* Code § 14–3–504(2) (1980); Zone R–2, *see* Code § 14–3–604(2) (1980); Zone PBC–1, *see* Code § 14–3–1308(4) (1980); Zone PBC–2, *see* Code § 14–3–1407(4) (1980); Zone M–1, *see* Code § 14–3–1904(8) (1980); and Zone M–2, *see* Code § 14–3–2004(2) (1980).

five people, consisted of praying, singing, studying the bible, and teaching Sunday school.

Appellants were issued an Administrative Notice and Order in June, 1985, asserting that Blanche was operating a religious institution in violation of section 14–3–303 of the Code of the City of Colorado Springs (1980). Blanche appealed to the Colorado Springs hearing office. After a full hearing, the notice and order was upheld by the hearing officer. Blanche then appealed to the Colorado Springs City Council, which likewise affirmed the notice and order, and found Blanche in violation of section 14–3–303. In spite of this, Blanche and Faith Bible continued to hold these religious activities at their residence.

On October 4, 1985, the city filed a complaint in the district court seeking to permanently enjoin appellants from continuing to operate and maintain a religious institution in violation of the Colorado Springs zoning laws. The court issued a temporary restraining order against the appellants prohibiting them from maintaining "an establishment for the conduct of religious activities" at the Blanche residence in the R–1 6000 zone. The order did not restrain Blanche from "conducting prayer and religious study activities with groups of reasonable size so long as such activities do not create or increase problems of noise, traffic and parking within the neighborhood."

On October 29, 1985, the city filed a motion pursuant to C.R.C.P. 107(c) for civil contempt based on appellants' violation of the temporary restraining order. After an evidentiary hearing, the court fined Faith Bible $2,500 and sentenced Blanche to perform eighty hours of community service. The order provided that the contempt order and sanctions would not be enforced if, at the time of trial, there were no further violations of the court's orders and the appellants used "every reasonable effort to seek an appropriate alternative for their church activities." On January 8, 1986, based on stipulated facts, the judge issued a preliminary injunction, effective October 29, 1985, enjoining Blanche and Faith Bible's use of the home as a religious institution.

On January 13, 1986, the court held a second hearing and found that appellants violated the preliminary injunction and were guilty of contempt of court. After the issuance of the first contempt order, the court concluded that "since the entry of the ... injunction on October 29 and certainly on January 5 of this year [Blanche and Faith Bible] have repeatedly, consistently, knowingly, willfully and defiantly violated the orders of this court to cease operating a religious institution." Appellants were then fined, jointly and severally, $10,000.

On March 31, 1986, the court permanently enjoined Blanche and Faith Bible from maintaining a religious institution at 2804 Country Club Circle. Before the permanent injunction was issued, appellants entered into an agreement to use facilities owned by Village Christian Church for appellants' religious activities. However, at the end of May, 1986, Blanche violated the agreement and resumed conducting services at his residence. On July 23, 1986, the district court entered a third civil contempt order finding Blanche and Faith Bible in violation of the permanent injunction and fined both Blanche and Faith Bible an additional $10,000.

On appeal to this court, appellants defend their use of the residence for religious purposes by contending that: (1) the zoning ordinance is unconstitutional because it violates due process and equal protection; (2) the trial court's grant of injunctive relief was an abuse of discretion; (3) the term "religious institution," as contained in the zoning ordinance, is unconstitutionally vague; and (4) the permanent injunction was issued by a trial court which had no jurisdiction to do so.

I.

*Constitutional Issues*

Blanche and Faith Bible claim that sec-

tions 14–3–504(2)[3] and 14–1–109[4] of the Code of the City of Colorado Springs (1980) deny them due process and equal protection of the law by unconstitutionally abridging appellants' rights to freedom of speech, assembly, association, and religion. To support their claim, appellants rely upon *City of Englewood v. Apostolic Christian Church*, 146 Colo. 374, 362 P.2d 172 (1961).

The applicable zoning ordinance in *City of Englewood* provided that land located in single- and two-family districts could be used for religious purposes only if a conditional use permit was first obtained from the Englewood Board of Adjustment and Appeals. The Apostolic Church applied for a conditional use permit to build a church in a district zoned for single- and two-family housing. The Board of Adjustment and Appeals denied the church's application whereupon the church initiated an action against the Board in district court. The district court reversed the Board's order, finding that the zoning ordinance violated the first and fourteenth amendments to the United States Constitution and article II, section 25 of the Colorado Constitution. The court directed the City of Englewood to issue a permit for the construction of the church building. On appeal, this court affirmed the district court's order.

■ A majority of the court concluded that the ordinance was a blanket exclusion of churches from single- and double-family residence districts, and held the ordinance to be unconstitutional. 146 Colo. at 380, 362 P.2d at 175. By way of contrast, the special concurrence of Justice McWilliams construed the Englewood ordinance as permissive and upheld the constitutionality of the ordinance. Regardless of how the En-

glewood ordinance should have been characterized, we have no doubt that the ordinance involved in this case is permissive. The analysis of Justice McWilliams in *City of Englewood* is persuasive and is applicable in this case.

Zoning ordinances which purport to regulate and control the new construction of churches in a given zoned area are generally divided into three types: (1) those which expressly authorize the location of a church in a given zoned area; (2) those which purport to expressly exclude or ban churches from a given zoned area; and (3) those which are "permissive" as to the location of a church within a particular zoned area. The latter type permits a church to locate in a given zoned area only after obtaining a permit therefor as the result of favorable action by an administrative body designated to consider such requests. *The zoning ordinance of Englewood with which we are here concerned is of the latter or "permissive" type. In other words the zoned area where plaintiff church ... seeks to locate is not one where the ordinance contains a blanket exclusion of all churches. Rather it is an area where the right of a church to locate therein is permissive rather than absolute.*

146 Colo. at 380, 362 P.2d at 175–76 (emphasis added) (McWilliams, J. concurring).

■ Here, as in *City of Englewood*, the zoning ordinance at issue is the "permissive" type. A majority of jurisdictions have held these types of ordinances to be constitutional. *See, e.g., Grosz v. City of Miami Beach*, 721 F.2d 729 (11th Cir.1983);

3. Colorado Springs, Co., Code § 14–3–504(2) (1980), allows religious institutions in an R–1 6000 zone provided the institution meets the following criteria:

2. Religious Institutions

   (a) Religious institutions with principal auditorium capacity of not more than three hundred (300) seats shall have a minimum lot area of two and one-half (2.5) acres. Religious institutions with principal auditorium capacity of three hundred and one (301) seats shall have a minimum lot area of four (4) acres.

   (b) No principal or accessory building shall be located less than fifty feet (50') from the right-of-way line of any public way. No off-street parking or maneuvering shall be located less than twenty five feet (25') from the right-of-way line of any public way.

4. Colorado Springs, Co., Code § 14–1–109 (1980) defines religious institution as:

   RELIGIOUS INSTITUTION: Establishment for the conduct of religious activities, including accessory housing. This term includes the term church, temple, seminary, retreat, monastery, and similar terms.

*Lakewood, Ohio Congregation of Jehovah's Witnesses, Inc. v. City of Lakewood,* 699 F.2d 303 (6th Cir.1983); *West Hartford Methodist Church v. Zoning Bd. of Appeals,* 143 Conn. 263, 121 A.2d 640 (1956); *Rogers v. Mayor & Aldermen,* 110 Ga.App. 114, 137 S.E.2d 668 (1964); *Diocese of Rochester v. Planning Bd.,* 1 N.Y.2d 508, 154 N.Y.S.2d 849, 136 N.E.2d 827 (1956); *State ex rel. Anshe Chesed Congregation v. Bruggemeier,* 97 Ohio App. 67, 115 N.E. 2d 65 (1953); *Milwaukie Co. of Jehovah's Witnesses v. Mullen,* 214 Or. 281, 330 P.2d 5 (1958); *State ex rel. Wenatchee Congregation of Jehovah's Witnesses v. City of Wenatchee,* 50 Wash.2d 378, 312 P.2d 195 (1957); Annotation, *Zoning Regulations as Affecting Churches,* 74 A.L.R.2d 377 (1960); 2 A. & D. Rathkopf, *The Law of Zoning and Planning* 20–9 to –10 (1987). We join the majority of jurisdictions that are consistent with the special concurrence in *City of Englewood.* [5] To the extent that our decision in *City of Englewood* conflicts with our decision in this case, it is overruled.

■ An administrative board's refusal to issue a conditional use permit will be upheld only if there is substantial evidence to establish that denial of the permit is beneficial to the health, safety, morals or general welfare of the community. *See, e.g., State ex rel. Ansche Chesed Congregation v. Bruggemeier,* 97 Ohio App. 67, 115 N.E.2d 65 (1953); *Milwaukie Co. of Jehovah's Witnesses v. Mullen,* 214 Or. 281, 330 P.2d 5

*(1958); State ex rel. Wenatchee Congregation of Jehovah's Witnesses v. City of Wenatchee,* 50 Wash.2d 378, 312 P.2d 195 (1957).

However, because appellants never applied for a conditional use permit, we need only review whether the district court abused its discretion in imposing injunctive relief against appellants.

## II.

### *Abuse of Discretion*

Appellants contend that the trial court's imposition of injunctive relief and its contempt orders were abuses of discretion. Appellants argue that the city did not make the necessary showing for injunctive relief and that their conduct did not violate the court's injunctions. Under the facts, we conclude that the trial court did not abuse its discretion by enjoining appellants' conduct.

An injunction provides relief against future harmful conduct. *Board of County Comm'rs v. Pfeifer,* 190 Colo. 275, 546 P.2d 946 (1976); *Wyman v. Jones,* 123 Colo. 234, 228 P.2d 158 (1951). In *Rathke v. MacFarlane,* 648 P.2d 648 (Colo.1982), we stated that a preliminary injunction will be granted if the plaintiff establishes: (1) a reasonable probability of success on the merits; (2) a danger of real, immediate, and irreparable injury that may be prevented by injunctive relief; (3) there is no plain, speedy,

---

**5.** Our conclusion that Colorado Springs' permissive zoning scheme is constitutional is bolstered by the United States Supreme Court's repeated dismissal of appeals from state court decisions upholding the constitutionality of zoning laws which restrict the location of religious institutions. The Court dismissed the appeals in the following cases for want of a substantial federal question. *See, e.g., Corporation of Presiding Bishop v. City of Porterville,* 90 Cal.App.2d 656, 203 P.2d 823 (1949) (zoning ordinance excluding churches from residential districts valid), *appeal dismissed,* 338 U.S. 805, 70 S.Ct. 78, 94 L.Ed. 487 (1949); *Allendale Congregation of Jehovah's Witnesses v. Grosman,* 30 N.J. 273, 152 A.2d 569 (1959) (per curiam) (denial of permit to build church did not violate first amendment where church could comply with regulations governing parking), *appeal dismissed,* 361 U.S.

536, 80 S.Ct. 587, 4 L.Ed.2d 538 (1960); *Damascus Community Church v. Clackamas County,* 45 Or.App. 1065, 610 P.2d 273 (1980) (no first amendment prohibition against preventing church from operating a parochial school in its church building), *appeal dismissed,* 450 U.S. 902, 101 S.Ct. 1336, 67 L.Ed.2d 326 (1981); *see also American Communications Ass'n v. Douds,* 339 U.S. 382, 70 S.Ct. 674, 94 L.Ed. 925 (1950) ("We recently dismissed for want of substantiality an appeal in which a church group contended that its First Amendment rights were violated by a municipal zoning ordinance preventing the building of churches in certain residential districts."). Dismissal of an appeal for want of a substantial federal question is a disposition on the merits and is binding on this court. *Hicks v. Miranda,* 422 U.S. 332, 95 S.Ct. 2281, 45 L.Ed.2d 223 (1975).

and adequate remedy at law; (4) the granting of a preliminary injunction will not disserve the public interest; (5) the balance of equities favors the injunction; and (6) the injunction will preserve the status quo pending a trial on the merits. If a property owner violates a city zoning ordinance, the city is not limited to the issuance of a citation or the filing of a complaint but may obtain an injunction to restrain the violation. *City of Englewood v. Kingsley*, 178 Colo. 338, 497 P.2d 1004 (1972). The decision to grant or deny injunctive relief lies within the sound discretion of the trial court. *Rathke*, 648 P.2d at 653 (preliminary injunction); *Crosby v. Watson*, 144 Colo. 216, 355 P.2d 958 (1960) (preliminary or temporary injunction).

The trial court concluded that the city was entitled to a preliminary injunction. In view of the evidence and the findings and the order granting the preliminary injunction, the court granted a permanent injunction prohibiting appellants from maintaining a religious institution at 2804 Country Club Circle.[6] The civil contempt orders were based on findings that the appellants repeatedly engaged in conduct prohibited by the injunctions. The court's findings are supported by the record and must be upheld on appeal. *Gebhardt v. Gebhardt*, 198 Colo. 28, 595 P.2d 1048 (1979). The decisions to grant the city temporary and permanent injunctive relief and to hold appellants in civil contempt were not abuses of discretion.

## III.

### *Vagueness*

Appellants claim that section 14–3–504 of the Code of the City of Colorado Springs (1980) is unconstitutionally vague both on its face and as applied because the term "religious institution" is not adequately defined. Section 14–1–109 of the Code of the City of Colorado Springs (1980) defines "religious institution" as an "[e]stablishment for the conduct of religious activities, including accessory housing. This term includes the terms church,

6. The substance of both the preliminary and permanent injunctions closely followed the findings made by the district court in the temporary restraining order. The temporary restraining order provided:

1. That the Defendants are operating and maintaining a religious institution in an R–1 6000 Residential Zoning District without a conditional use in violation of the requirements of § 14–3–504.2 of the Code of the City of Colorado Springs, as amended.

2. That the Defendants failed to appeal the final agency action of the City of Colorado Springs that they were in violation of the above-referenced section of the City Code pursuant to the requirements of C.R.C.P. 106(a)(4).

3. That in spite of the City Council determination that the Defendants were acting in violation of the above-referenced section of the City Code and by operating and maintaining a religious institution in an R–1 6000 Zone without a conditional use, the Defendants have continued to do the same on a continuing basis.

4. That unless the Defendants are restrained from continuing to operate and maintain a religious institution at 2804 Country Club Circle, the laws of the City of Colorado Springs, as a Home Rule City and a Colorado Municipal Corporation will be frustrated and contin-

ually violated, all contrary to the public health, safety and welfare, which is tantamount to immediate and irreparable injury.

5. That prior notice of the signing of this Order is not required for the reason that the health, safety and welfare of the public is at stake by virtue of the Defendants' failure to comply with the law, which became final by virtue of the doctrines of res judicata and collateral estoppel their failure to appeal the City Council's final agency action determination that they are in violation of the City's Zoning Code by their failure to initiate C.R.C.P 106(a)(4) certiorari review of the record.

6. That the City of Colorado Springs is entitled to injunctive relief to enforce final agency action.

IT IS THEREFORE ORDERED By the Court that the Defendants are hereby restrained and prohibited from maintaining an establishment for the conduct of religious activities at 2804 Country Club Circle in Colorado Springs, pending a hearing on Plaintiff's motion for a preliminary injunction ...; provided, however, that the Defendants are not by this order prohibited from conducting prayer and religious study activities with groups of reasonable size so long as such activities do not create or increase problems of noise, traffic and parking within the neighborhood.

temple, seminary, retreat, monastery and similar terms."

A statute is vague on its face if it is "impermissibly vague in all its applications;" that is, there is no conduct that it proscribes with sufficient clarity. *Village of Hoffman Estates v. Flipside, Hoffman Estates, Inc.*, 455 U.S. 489, 495, 102 S.Ct. 1186, 1191, 71 L.Ed.2d 362 (1982); *People v. Milne*, 690 P.2d 829 (Colo.1984); L. Tribe, *American Constitutional Law* 1033–35 (2d ed. 1988). A statute is vague as applied if it does not, with sufficient clarity, prohibit the conduct against which it is to be enforced. *Palmer v. City of Euclid*, 402 U.S. 544, 91 S.Ct. 1563, 29 L.Ed.2d 98 (1971); L. Tribe, *supra* at 1033–35. A party may test a law for vagueness as applied only with respect to his particular conduct; if a statute is not vague as applied to that particular conduct, it will be enforced even though the law may be vague as applied to the conduct of others. *Hoffman Estates*, 455 U.S. 489, 102 S.Ct. 1186, 71 L.Ed.2d 362 (1982); *Parker v. Levy*, 417 U.S. 733, 94 S.Ct. 2547, 41 L.Ed. 2d 439 (1974); *Milne*, 690 P.2d at 836; L. Tribe, *supra*, at 1036.

Here, the statute at issue is neither vague on its face nor as applied. Because "religious institution" is defined by section 14–1–109 to include the terms "church, temple, seminary, retreat, monastery," the statute does not fail for facial vagueness. It is also amply clear from the evidence that the appellants used the Country Club Circle property for church purposes, a use expressly prohibited by section 14–3–504 as defined by section 14–1–109. The statute is therefore not unconstitutionally vague as applied to the Blanche's conduct.

## IV.

### *Jurisdictional Issues*

 Appellants claim that the district court's grant of injunctive relief was pre-mature under C.R.C.P. 106(a)(4) because a petition of review was timely filed with the United States District Court for Colorado. Appellants' claim that a petition for certiorari review can be filed in federal court pursuant to C.R.C.P. 106(a)(4) is without merit. Under the plain and unambiguous language of C.R.C.P. 106(a)(4) and well-established principles of constitutional law, the term "district court" refers to state and not federal courts. As a matter of constitutional law, federal courts are bound by the Federal Rules of Civil Procedure and not by rules of procedure governing state courts. *See Byrd v. Blue Ridge Rural Elec. Coop., Inc.*, 356 U.S. 525, 78 S.Ct. 893, 2 L.Ed.2d 953 (1958); *Guaranty Trust Co. v. York*, 326 U.S. 99, 65 S.Ct. 1464, 89 L.Ed. 2079 (1945); *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938); *see also* C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* §§ 4503–4 (1982) (discussing *Erie* doctrine); 1A J. Moore, *Moore's Federal Practice* 3053–76 (1987) (same). Since appellants did not timely file a petition for certiorari review in state court pursuant to C.R. C.P. 106(a)(4), the district court had jurisdiction to grant injunctive relief to appellee in a separate action.

The appellants' remaining arguments are without merit. Accordingly, we affirm the district court's issuance of a permanent injunction and the orders, penalties, and fines imposed for contempt of court.