GARY S. SIMPSON, Treasurer and Ex-Officio Tax Receiver of Washoe County; ROBERT McGOWAN, Assessor, Washoe County; and the COUNTY OF WASHOE, Appellants, v. THE INTERNATIONAL COMMUNITY OF CHRIST, CHURCH OF THE SECOND ADVENT FOR THE ESTABLISHMENT OF THE RELIGION OF COSOLARGY, DOUGLAS EUGENE SAVOY, Trustee in Trust and Overseer of the INTERNATIONAL COMMUNITY OF CHRIST, REVEREND DOUGLAS EUGENE SAVOY and REVEREND PHILLIP W. SNYDER, Respondents.

No. 19757

August 1, 1990                                        796 P.2d 217

---

*Mills Lane,* District Attorney, *Thomas F. Riley,* Chief Deputy District Attorney, *Chester H. Adams,* Deputy District Attorney, Washoe County, for Appellants.

*Larry R. Petty,* Reno, for Respondents.

## OPINION

By the Court, ROSE, J.:

The district court determined that The International Community of Christ, Church of the Second Advent for the Establishment of the Religion of Cosolargy (Community of Christ), was entitled to a real property tax exemption pursuant to NRS 361.125(1) and NRS 361.140(2) because it was a religious organization that actually used approximately 1300 acres of real property for religious purposes. This overruled the determination of the Washoe County Assessor that only 146 acres were actually used and, therefore, exempt from taxation. We conclude that the record does not support granting a greater tax exemption than that determined by the Washoe County Assessor and reverse the district court's judgment that granted the entire two square miles of real property exempt from real property taxation.

### STATEMENT OF FACTS

The Community of Christ owns two large parcels of non-contiguous real property in the Red Rock Estates area north of Reno that it calls the north and south sanctuaries. The sanctuaries

are five miles apart. Pursuant to divine revelation, the large parcels were acquired and divided into 25 smaller tracts of land that the Community of Christ calls "churches," and each encompasses more than 40 acres. There is a cleared open-air worship area on each church tract that contains an altar or a communion table. The cleared area on each tract is usually considerably less than one acre. Large crosses have been erected on several of the hills on the property. There is no building or structure on any of the church tracts and the remaining land is left in its natural state.

The Community of Christ holds a religious ceremony on one of the more frequently used church tracts each week, with another ceremony conducted each week on a rotating basis from one church tract to another. A few church tracts are frequently used, a number are used occasionally, and several are never used for religious ceremonies. The Community of Christ's doctrine requires that certain observances be conducted out of doors. The Church's belief is that when one parcel is being used for worship, all of the property is combined to form a single sanctuary. The entire two square miles of real property is used for nothing other than religious purposes.

To assist the assessor in determining what church land is exempt from taxation pursuant to NRS 361.125(1) and NRS 361.140(2), the Washoe County District Attorney's office issued an opinion letter stating what should be considered in determining a religious tax exemption. The guidelines set forth in the letter included the consideration of all improvements and improved land actually used for religious purposes, parking and roads of ingress and egress, landscaping, additional land necessary to separate the religious improvements from other property so as to allow peaceful worship, and the land needed for future expansion. Using these guidelines and his experience, an appraiser from the assessor's office inspected the two square miles for which the church claimed a total tax exemption.

The assessor determined that the altar, communion tables, crosses and other improvements were obviously exempt, as well as the cleared area and roads in each tract. In addition, the assessor classified as exempt additional acreage around the cleared area so that each "church tract" had about five acres of land determined to be exempt. A few parcels with more improvements or cleared area were granted an even larger exemption. Of the 25 parcels, 146 of the 1300 acres were determined to be exempt by the assessor.

The Community of Christ challenged the assessor's determination and filed suit to have all 25 tracts, approximately two square miles of land, declared exempt from real property taxation pursuant to NRS 361.125 and 361.140. After a bench trial, the district

court found that the Community of Christ was a religious organization or church and that it actually occupied all of the 25 parcels. Judgment was entered declaring the Church's 25 parcels exempt from taxation. Washoe County, its treasurer and assessor have appealed that decision and judgment to this court.

## DISCUSSION

The initial problem that must be addressed is that both NRS 361.125(1) and 361.140(2) refer to a church or structure, together with the lot on which it stands or the land around it that is actually used. There are no buildings or structures on the church tracts but only an altar or communion table, a cleared area and a few crosses. The Washoe County District Attorney's office took the position in its advisory letter to the county assessor that if there are no improvements on the land, no religious exemption can be granted under the statute. However, if there are actively used religious improvements, even though they are not a traditional church or building structure, such improvements are sufficient to comply with the statutes.

Requiring that some improvement must be on the land claimed to be exempt because of religious use seems reasonable to us and in conformity with NRS 361.125(1) and 361.140(2). NRS 361.125(1) declares exempt from taxation churches or other buildings used for religious worship and the lots of ground on which they stand that are used therewith and necessary thereto. NRS 361.140(2) exempts all buildings of a charitable or religious organization together with the land actually occupied. By reading both statutes, it is clear that the legislature wanted to exempt a building, structure or improvement used by a religious or charitable organization and the land around it actually used and necessary to the structure's or improvement's use. The assessor's position is that the structure need not be a traditional church, synagogue, or stake building, but can be any improvement that the church actually uses. Such an interpretation gives the assessor some flexibility in granting a religious tax exemption to real property owned by non-traditional religious organizations that practice unorthodox forms of worship. Therefore, an improvement and actual use are the essential requirements before a church or religious orgainzation can claim an exemption pursuant to NRS 361.125(1) or NRS 361.140(2).

A tax exemption should not expand or contract depending on the liturgy or methodology of a religious organization. Rather, it

should be governed by a strict interpretation of the tax exemption statute. This court has held that tax exemptions must be strictly construed against the party claiming the exemption. Sierra Pac. Power v. Department of Taxation, 96 Nev. 295, 297, 607 P.2d 1147, 1148 (1980). The Washoe County Assessor has been reasonable with its grant of exemptions totalling more than ten percent of the two square miles of land. A strict, even a reasonable, interpretation of these two tax exemption statutes when applied to the facts of this case does not lead to the conclusion that two square miles of vacant land should be tax exempt because a religious group conducts open-air religious ceremonies a few times a week at different locations on the land. Spiritual or constructive use should not be considered actual use.

## CONCLUSION

There is insufficient evidence to support the district court's decision that the Community of Christ actually used more of the church tracts than the Washoe County Assessor determined was used and thus exempt from taxation. When the evidence in a record supports only a portion of the judgment entered, that judgment must be reversed to the extent that it is unsupported. *See* City Council of Reno v. Reno Newspapers, 105 Nev. 886, 784 P.2d 974 (1989).

This case is reversed and remanded to the district court with directions to uphold the tax exemption determined by the Washoe County Assessor.

YOUNG, C. J., and SPRINGER, J., concur.

STEFFEN, J., concurring:

With a degree of apprehension, I concur in the opinion written by my brother, ROSE.

A tax exemption is provided to recognized religious societies or corporations by the legislature in deference to the public benefits derived from the encouragement of religion. *See, e.g.,* State ex rel. Anshe Chesed Congregation v. Bruggemeier, 115 N.E.2d 65 (Ohio App. 1953); First Unitarian Soc. v. Hartford, 34 A. 89 (Conn. 1895). In the instant case, there is no contention that respondents are not entitled to the exemption provided by the statute. We may therefore properly conclude that respondents are conferring a legitimate benefit on the citizens of Nevada by virtue of the activities and principles peculiar to their organization.

My somewhat less than enthusiastic concurrence with today's ruling stems from the fact that determinations concerning the extent of land exempt from taxation under NRS 361.125 are now

left to human judgments and predilections rather than the law. Although those judgments and predilections are subject to court review, they are nevertheless unfettered by clear statutory mandate. I would prefer to have the legislative branch of government, after full debate and consideration of alternatives and consequences, resolve the types of issues presented by this appeal in the form of more comprehensive legislation.

As presently constituted, NRS 361.125(1) provides an exemption from tax for church improvements (primarily buildings) together with their furniture and equipment, and the "lots of ground on which they stand, *used therewith and necessary thereto.*" (Emphasis supplied). The real problem with the statute, as graphically demonstrated by this appeal, is that a determination of the meaning of the all-important term "necessary" is left to individuals within the Department of Taxation and outside the affected organization.

In the case before us, respondents may well have determined that the acreage used in their worship services is necessary to the full realization of the expectancies of their religious doctrine and principles. The record is bereft of concern regarding the bona fides with which respondents hold and use their land. There isn't the slightest hint that respondents have acquired and maintained their property for pecuniary advantage or other purpose inconsistent with the statutory intent. Nor is there evidence that the property is used for other than church purposes or to generate rental income. Respondents suffer only from a judgment in conflict with their own, that the amount of land consecrated for their method of worship is unnecessary. We are thus left with Caesar determining both what is due Caesar and that which is due God. I would feel more comfortable with Caesar's judgment if it could be validated by a clearly expressed statutory mandate from the elected representatives of the people.

I am nevertheless satisfied that under the current wording of the statute, the aforementioned procedure for determining the practical effect and scope of the statutory language must remain with the Department because religious organizations may not extend exemption privileges in the name of religion to unreasonable extremes. To the extent they may do so, their activities or holdings may be deemed to exceed the boundaries of public benefit. Still, I would prefer having those extremes defined by statute rather than individual fiat.

NRS 361.045 provides that all property within the state shall be subject to taxation "[e]xcept as otherwise provided by law." The statute at issue provides an exemption to lots of ground on which improvements owned by authorized religious organizations are situated, when they are used therewith and are necessary

thereto. Unfortunately, determinations of both use and necessity are determined on an ad hoc basis by human agency rather than statutory specification. Although statutory parameters may be difficult to structure, it seems to me that the subject is of sufficient importance to warrant the attempt. In the meantime, I reluctantly concur in the expressions of my brother Rose because I am unable to conclude that he has assigned and unnatural meaning to the legislative intent as reflected by the present language of the statute.

Mowbray, concurring.

I concur with Justice Rose and Justice Steffen.

The bottom line is whether the Washoe County Assessor or the District Court Judge who, in effect, overruled the assessor, was correct in the assessment of the respondent's property.

The assessor's position should be supported. I shudder to think of the consequences if we were to do otherwise.

While I certainly favor and support the tax exemptions granted religious and charitable organizations by the legislature, enough is enough!

As in all cases, reasonableness and honesty must be applied in granting those exemptions. To do otherwise, is not only unfair to all religious and charitable organizations, but also to our citizens who must bear and pay their individual share of the overall tax burden.

Therefore, I would reverse and remand with instructions to enter judgment in favor of the assessor.